(No. 48533.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. LORENZO P. COOPER, Appellee.

*Opinion filed May 20, 1977.*

William J. Scott, Attorney General, of Springfield, and Richard J. Doyle, State's Attorney, of Danville (James B. Zagel, Assistant Attorney General, of Chicago, and G. Michael Prall, Principal Attorney, and Stephen M. Deitsch, Staff Attorney, Illinois State's Attorneys Association Statewide Appellate Assistance Service, of Springfield, of counsel), for the People.

Theodore A. Gottfried, State Appellate Defender, and Richard J. Wilson, Deputy Defender, Office of State Appellate Defender, of Springfield, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

In 1971, defendant, Lorenzo Cooper, pleaded guilty to a charge of arson and was sentenced by the circuit court of Vermilion County to a three-year period of probation, the first six months of which were served at the Illinois State Penal Farm. On July 18, 1974, a petition was filed seeking to revoke his probation. It alleged that defendant violated his probation in that he committed the offenses of unlawful use of weapons, criminal damage to property, aggravated battery, and armed violence. (Ill. Rev. Stat. 1973, ch. 38, pars. 24—1(a)(2), 21—1(a), 12—4(b)(1), and 33A—2.) Upon hearing, the trial court dismissed the charge of criminal damage to property, but held against defendant on the three remaining counts. Defendant's probation was revoked and he was sentenced on his earlier arson conviction to a term of two to six years in the penitentiary without credit for time served on probation.

The appellate court, in a two-to-one decision, reversed the trial court's judgment on the grounds that the State failed to prove, by a preponderance of the evidence, the

512

offense charged. (37 Ill. App. 3d 365.) We granted the State leave to appeal.

On the evening of July 13, 1974, the defendant and his wife were seated, waiting for a pizza order, in a restaurant in Danville, Illinois. Several feet away from the defendant stood a man, Leamon Covington, who was also waiting for an order. A restaurant employee testified that he observed defendant and Covington exchange glances, that the defendant had smiled a couple of times at Covington, and that Covington was staring and frowning at the defendant. This course of conduct lasted several minutes. Covington then picked up his pizza order and, while facing the defendant, began backing out through the doorway to the parking lot. He then stopped, came back inside, set his pizza down, turned toward the defendant, muttered a few words, and struck his fist into the palm of his hand. Defendant's wife testified that Covington said to the defendant, "You make me sick."

After Covington left, the defendant went outside to the trunk of his car and obtained an unloaded revolver. He placed the revolver inside his belt, pulled his shirt over it, and reentered the restaurant. Defendant testified that he obtained the revolver for protection because he and his wife were the only blacks in the restaurant and he was nervous.

A short time later, Covington reentered the restaurant. Defendant and his wife testified that, as they stood at the counter, Covington struck defendant from behind. A fight ensued. The restaurant employee did not see who landed the first blow, but stated, "Everything happened so quick that both [Covington's and defendant's] reactions seemed like they went off at the same time." Defendant testified that he fell forward, with his face to the floor, and that Covington was on top, hitting him. (Defendant, who stood 5 feet, 9 inches, estimated Covington's height at 6 feet, 7 inches, or 6 feet, 8 inches; the restaurant employee estimated it to be approximately 6 feet, 3 inches. Evidence

indicated that Covington weighed at least 80 pounds more than the defendant.) Shortly after he fell, defendant turned over, drew his revolver from beneath his shirt, and began to beat Covington with the gun on the side of the head "as many times as [he] could." The restaurant employee stated that when Covington saw the gun, he immediately attempted to disarm the defendant. When asked how he managed to turn over and draw his revolver with Covington on top of him, defendant stated that he taught wrestling and boxing. During the course of the fight, the defendant's wife picked up a tray and also struck Covington.

A summoned Danville police officer testified that upon arrival at the parking lot he encountered Covington, who had blood streaming from his face. A short time thereafter, the defendant, who had apparently left the restaurant, pulled into the parking lot, got out of his car, and started screaming at the police officer. Defendant testified that he was shouting, "I want that man arrested." Defendant, however, was placed under arrest and taken into custody. A search of the defendant's car, which was owned by a friend, revealed an M-1 carbine rifle, some .30-caliber shells, plus .38- and .357-caliber shell casings.

Covington was taken to the hospital for treatment, and, while there, photographs were taken of his injuries. One of the photos was introduced into evidence and it revealed Covington had received at least two large gashes on the side of his head. Further evidence of Covington's injuries came from the restaurant employee who testified that, after the fight, he noticed blood on Covington's head, redness around his eyes, and a cut above one eye. There is no evidence in the record regarding any injuries to the defendant.

The State argues that the evidence clearly supports the trial court's finding that the defendant committed aggravated battery in that he used a deadly weapon in a manner and to an extent which, under the circumstances, was

unreasonable, excessive, and unjustified. It contends such finding is not against the manifest weight of the evidence. We agree.

Criminal offenses which serve as a basis for probation revocation need only be proved by a preponderance of the evidence, and not beyond a reasonable doubt. (*People v. Grayson* (1974), 58 Ill. 2d 260, 264, *cert. denied* (1975), 421 U.S. 994, 44 L. Ed. 2d 484, 95 S. Ct. 2001; Ill. Rev. Stat. 1973, ch. 38, par. 1005–6–4(c).) The trial judge, who is in a superior position to weigh the evidence and to judge the credibility of the witnesses, was entitled to draw reasonable inferences and reach conclusions to which the evidence lent itself. It was for the trial court, sitting as the trier of fact, to determine whether the defendant was reasonable in his apprehension of harm and in the amount of force used. (*People v. Johnson* (1954), 2 Ill. 2d 165, 171-72.) Although the finding in a probation revocation proceeding is subject to review, a reviewing court will not and should not disturb that finding unless it is contrary to the manifest weight of the evidence. (*People v. Crowell* (1973), 53 Ill. 2d 447, 451-52.) The mere fact that a reviewing court might have reached a different conclusion had it been the trier of fact is insufficient to serve as a basis for reversal. *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356.

The extent of Covington's injuries, the fact that Covington apparently did not use a weapon but, in fact, appeared to be trying to disarm the defendant during the initial stages of the fight, the defendant's admitted knowledge of boxing and wrestling skills, his use of a deadly weapon, and his admission that he struck the alleged aggressor as many times as he could, support the trial court's finding that the defendant was unreasonable in his apprehension and that he employed an excessive amount of force. We hold that such finding was not contrary to the manifest weight of the evidence.

Having found the evidence sufficient to support the

trial court's finding that the defendant used a deadly weapon in an unlawful manner, it follows that the evidence also supported the court's finding that the defendant committed the offenses of armed violence and unlawful use of weapons. Ill. Rev. Stat. 1973, ch. 38, pars. 33A—2, 24—1(a)(2).

Accordingly, the judgment of the appellate court is reversed and the judgment of the circuit court of Vermilion County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*