THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TRUMAN HURLEY, Defendant-Appellant.

First District (4th Division)    No. 77-464

Opinion filed July 6, 1978.

Burton Sapoznick, of Chicago (Robert P. Sheridan and Ellen A. Goldstein, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Joan Cherry, and Bryan B. Lavine, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County finding that defendant, Truman Hurley, had violated his probation. The trial court had originally placed defendant on two years probation pursuant to a plea of guilty to the charge of robbery. While he was on probation, the State filed a petition for revocation charging him with another robbery. After probation revocation proceedings, the court found that defendant had violated his probation in the manner charged in the petition, revoked his probation and sentenced him to a term of 2 to 6 years in the penitentiary.

In this appeal defendant contends: (1) a ruling of the trial court denied him his right of confrontation; and (2) the finding that he violated his probation was against the weight of the evidence. We find defendant's contentions to be lacking in merit and we affirm the trial court's decision.

At the revocation hearing, the victim, Ziad Jamouse, testified that he lived on the eighth floor of an apartment building at 940 West Winona Street in Chicago. On June 16, 1975, he heard a knock on his apartment door. When he opened the door, Ray Robinson, an acquaintance, entered. While the two men were inside the apartment, the victim heard someone walking and talking in the hallway. When he opened the door to inquire, he saw the defendant and a third man and asked Robinson if the men in the hallway were his friends. Robinson responded that they were his friends. Due in part to a matter concerning money, the victim then asked Robinson to leave.

Robinson left as the victim locked the door behind him. Five minutes later, the victim heard Robinson knocking on the door. When he inquired, Robinson stated that he wanted to apologize. The door was then broken down and three men, Robinson, defendant and another man, Gordon, entered the apartment and attacked the victim. As he was struggling with the intruders, he heard Robinson say. "Take the T.V." At this point one of the men left the struggle. He then heard Robinson say, "Take the watch," and one of the assailants removed the watch from the victim's arm. Robinson then ran out of the door and down the front stairs with Jamouse behind him. The victim chased Robinson down the front stairs. When they reached the second floor the police apprehended Robinson and took him to the main floor lobby. The victim identified his watch and portable television which the police recovered.

On cross-examination, it was brought out that while Robinson was in Jamouse's apartment for the first time on the day of the incident Robinson tried to hit him, but the victim did not hit him back or rip his clothes. Jamouse had talked to Robinson in the street on occasion before the incident, and Robinson had been to his apartment twice before. Defense counsel inquired further into the degree of hospitality which the victim had shown Robinson on these previous occasions, but the trial court sustained objections to this line of inquiry. The victim also testified that he could not be sure if defendant had actually hit him, and he did not see him take anything, but he was certain that defendant was in his apartment. On redirect examination, the victim stated that defendant had, in fact, attacked him.

George Schimmel, a Chicago police officer, testified that he and his partner responded to a radio assignment. As they approached the apartment building, Schimmel saw a man walking outside. Other police officers detained this man. Schimmel proceeded into the lobby where he observed the defendant coming from the back of the building. After the police had gathered the three men in the lobby, the victim identified them as the men who had robbed him, and the police arrested these men. The police recovered the victim's watch from the third man, Gordon, whom the officer had originally seen leaving the building. The police also recovered the portable television set from the first-floor landing of the rear stairs, approximately 30 to 40 feet from where Schimmel had originally seen the defendant. No one else was in the area at this time.

The officer observed that the victim had scratches and bruises on his face and body. The door frame and night chain on the door to the victim's apartment appeared to have been broken, and the apartment was in disarray.

On cross-examination, the officer testified that he did not observe any

scratches or bruises on the defendant, his clothes were not in disarray, and he was not breathing heavily. Defendant initially told the police that he was visiting someone in the building.

The defendant testified in his own behalf that on the day of the incident he met Robinson and Gordon at the park. On their way home they met Jamouse who invited Robinson up to his apartment. Defendant and Gordon stayed in the front lobby, while Robinson went upstairs. Minutes later, Robinson ran down the stairs with his shirt torn off and tears running from his eyes. Robinson told them that he had been in a fight and needed help. Just as defendant reached the eighth floor to offer assistance he noticed that Robinson, Gordon and Jamouse had begun fighting again. Realizing that engaging in a fight might jeopardize his probation, he turned around and went back downstairs. The police stopped him for questioning when he had walked about one-half block from the building. He testified that he was not aware that anything had been taken from the victim until the police told him so.

The State called Officer Roland Carlson as a rebuttal witness. The officer testified that he responded to a radio assignment. As he exited his vehicle, he observed Gordon leaving the apartment building. As he entered the building, he noticed the defendant walking from the back of the building toward the lobby. The police gave defendant his *Miranda* warnings. Officer Carlson asked defendant, "Where is the T.V.?" to which defendant replied that he left it at the back staircase.

Defendant's first contention is that the trial court denied him his due process right of confrontation. He complains that the trial court improperly restricted the scope of his cross-examination of the victim.

It has been said that the right of cross-examination is the core of the right to confrontation, and defendant must have reasonable latitude to cross-examine the State's witnesses. (*People v. Lipscomb* (1974), 19 Ill. App. 3d 114, 311 N.E.2d 257.) The scope of such examination rests largely within the sound discretion of the trial court and only where there has been an abuse of discretion resulting in manifest prejudice to the defendant will the court interfere. *People v. Peter* (1973), 55 Ill. 2d 443, 303 N.E.2d 398, *cert. denied* (1974), 417 U.S. 920, 41 L. Ed. 2d 225, 94 S. Ct. 2627; *People v. Nugara* (1968), 39 Ill. 2d 482, 236 N.E.2d 693, *cert. denied* (1968), 393 U.S. 925, 21 L. Ed. 2d 261, 89 S. Ct. 257.

During the cross-examination of the victim, defendant established that the victim had known Robinson for a year, and Robinson had been at his apartment twice before. Counsel asked the victim if he had offered Robinson food on these previous occasions. The court sustained the State's objection to this question. Defense counsel argued that the question was relevant to the victim's credibility, but counsel failed to indicate how. Counsel now argues that the testimony would suggest that

because Robinson and the victim had a personal relationship prior to the incident, the latter's testimony about the incident would be less than truthful.

■■ The record shows that the victim had testified about his previous relationship with Robinson, and the court had allowed counsel to investigate this relationship for what it was worth. We find it was not an abuse of discretion resulting in manifest prejudice for the court to curtail further inquiry into this matter. The court may in its discretion curtail prolonged cross-examination. (*People v. Hanley* (1977), 50 Ill. App. 3d 651, 365 N.E.2d 676.) We find that defense counsel fully and fairly cross-examined the victim.

Defendant's second contention is that the finding that he violated his probation was against the manifest weight of the evidence. Defendant was charged with participation in the robbery. As such the State had the burden of proving the change by a preponderance of the evidence. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—6—4(c).) A reviewing court will not disturb the finding that defendant violated his probation unless that finding is against the manifest weight of the evidence. *People v. Cooper* (1977), 66 Ill. 2d 509, 363 N.E.2d 817.

The record shows that the victim was somewhat confused about the degree of defendant's participation in the robbery. On cross-examination, he was not certain that defendant hit him or took any of his belongings. On redirect examination, he reaffirmed his earlier testimony that defendant had attacked him. In any case, the victim's testimony does not stand alone. Two police officers testified that they recovered the television set from the rear stairway from which they saw the defendant walking. Officer Carlson further testified that defendant told him that he left the television on the back staircase. Contrary to defendant's testimony that he first encountered the police as he was leaving the building the officers positively identified Gordon as the man apprehended outside the building, and defendant as the man they saw inside.

Defendant argues that because he bore no marks of having been in a fight and because there was nothing to show that his fingerprints were on the television set, his testimony should be believed. However, it has long been established that the trial court must determine the credibility of witnesses and the weight to be given their testimony. We will not disturb a finding of revocation of probation merely because of conflicting testimony. *People v. Crowell* (1973), 53 Ill. 2d 447, 292 N.E.2d 721.

■■ The trial court was entitled to draw reasonable inferences from the evidence and reach appropriate conclusions. (*People v. Cooper* (1977), 66 Ill. 2d 509, 363 N.E.2d 817.) On this record, the trial court was justified in finding that defendant was responsible for the robbery, and we find that the evidence sufficiently establishes his culpability. The finding that

defendant violated his probation is not against the manifest weight of the evidence.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

JOHNSON, P. J., and DIERINGER, J., concur.