THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MILAN MARTIN, Defendant-Appellant.

First District (5th Division)   No. 78-1489

Opinion filed August 31, 1979.

James J. Doherty, Public Defender, of Chicago (Mary T. Woodward, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Linda Dale Woloshin, and Nancy Lynn Martin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendant appeals from a judgment of the circuit court revoking his probation and sentencing him to three years in the penitentiary. On appeal he contends that he was not proved to be in violation of his probation by a preponderance of the evidence, and the trial court erred when it imposed sentence without receiving a presentence investigation report.

In August 1977 defendant pleaded guilty to burglary. (Ill. Rev. Stat. 1977, ch. 38, par. 19—1.) No presentence report was compiled after he waived such procedure. In conformity with the plea agreement, he was placed on probation for three years with 60 days incarceration as a condition thereof. The court was informed that defendant was currently on probation for a misdemeanor conviction, but the judge who imposed

that sentence had indicated that the guilty plea would not result in a termination of probation.

Within six months thereafter, the State filed a petition to revoke probation based, *inter alia*, on defendant's alleged burglary committed on October 26, 1977. At the hearing on this petition, the State established that the building in question was a seven-apartment structure located on the South Side of Chicago. The building had been owned by William Gregory, but the savings institution that had issued the mortgage had apparently foreclosed and was in the process of rehabilitating the structure during October 1977 in anticipation of selling it. A contractor had been employed to accomplish this purpose.

The contractor, Louis Flores, testified that he used the basement of the building to store building materials. He locked the door with a padlock every day upon completion of the work and retained the only key to the lock. A security guard, contracted from a community organization, would then watch the premises during the night. The morning following the occurrence, upon which defendant's probation was revoked, Flores observed that the padlock and part of a door hinge were missing; a sanding machine was also missing from the basement.

The building security guard, Raymond Adams, had captured defendant and another man about 8 p.m. on October 26, 1977. Adams was working the 4 to 12 p.m. guard shift that day. Adams was in the garage behind the building when he saw defendant and two other men in the back yard. Defendant and one other man approached the basement door. Defendant appeared to use a pipe to pry off the padlock and both men entered the basement. The third person evidently went to a car parked behind the garage because, when this witness came out of the garage, the car was driven away after the driver used the horn apparently as a signal.

Adams asserted that, when defendant was in the basement, he emerged from the garage and went to an apartment in the building to use the telephone, but no one responded so he returned to the garage. Adams then saw defendant and the other man come out of the basement; they were carrying a box. Adams kicked a metal can to frighten the intruders and both men ran toward Adams who captured them at gunpoint. At this time defendant stated that the carpenters had given him permission to enter the basement.

On cross-examination defense counsel attempted to discredit Adams' testimony by reference to several inconsistencies with his testimony at a preliminary hearing and in a report compiled by Adams' employer concerning the matter which Adams had signed. It was determined that Adams had previously stated that he was standing next to the garage when he saw the intruders in the yard. Further he had stated that the

padlock was cut and not forced open. In the case report Adams did not mention that the door was forced. On cross-examination Adams also indicated that he watched as the intruders removed several items from the basement and put them in the car; yet he could not see the car from his vantage point. Other seeming inconsistencies involved his belief that a third individual was aiding defendant and the other man in removing the property even after the car was driven away, and Adams' prior recollection that the noise he made to scare the intruders resulted from his stumbling over a pile of pipes and not his intentional kicking of a can to create noise.

William Gregory testified that he had continued to live in the building after the savings institution had taken possession. He stored many items of his personal property in the basement, and he retained a key to the basement after giving another to the contractor. Gregory said that he had employed defendant on a part-time basis for several years. Gregory had not told defendant that the contractors were using the basement.

Defendant testified that on the day of his arrest he went to Gregory's building about 4 p.m. where he briefly assisted a carpenter. Later he returned to find Gregory and to ask if he had any work for him. Defendant entered the back yard where he saw a light on in the basement and the door open. Defendant went to the doorway and called inside thinking that Gregory was there. However, when no one replied, he headed toward the alley on his way to one of Gregory's businesses. At this point Adams confronted defendant and his two companions at gunpoint and ordered them to lie on the ground. Defendant and one other were handcuffed and the third person was tied. Adams purportedly fired two shots into the garage. Defendant denied knowing that Gregory was no longer the building owner.

Defendant maintains that the crucial aspect of the evidence against him was the testimony of Adams. Defendant asserts that Adams was sufficiently discredited by matters we have previously noted in regard to his cross-examination. We disagree.

The State need only show a violation of probation by a preponderance of the evidence. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—6—4(c).) At such proceeding the trial court is in a superior position to assess the witnesses' credibility than a reviewing court, and that determination will not be set aside unless manifestly erroneous. (*People v. Crowell* (1973), 53 Ill. 2d 447, 451-52, 292 N.E.2d 721.) Even when a court of review might well have reached a differing result if it had acted as trier of fact, this does not create a proper basis to disturb the trial court's decision. *People v. Cooper* (1977), 66 Ill. 2d 509, 514, 363 N.E.2d 817.

■■ Judged by the aforesaid standards, it cannot be said that acceptance of Adams' testimony was manifestly erroneous. As defendant notes, there

were some inconsistencies demonstrated between Adams' testimony and his prior recollections. These variations are minor and are not unusual; they do not destroy his credibility. (*People v. Bell* (1972), 53 Ill. 2d 122, 125-26, 290 N.E.2d 214.) Adams' testimony was consistent in the material aspect that defendant forced entry into the building and was in the process of removing items from the basement when he was captured. Such entry was without authority. We cannot say that acceptance of his testimony was manifestly erroneous.

■■ Defendant also maintains that imposition of the 3-year determinate term was improper because no presentence report was ever submitted either at his plea of guilty or upon revocation of probation. Defendant waived a presentence report upon pleading guilty, and no hearing was held in aggravation and mitigation after his revocation of probation. Rather the court was informed only that defendant was married with a child.

Defendant relies on section 5—3—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—3—1), which provides for a presentence report upon conviction for a felony, and *People v. Comerford* (1975), 35 Ill. App. 3d 287, 341 N.E.2d 131. *Comerford* involved a situation where defendant had pleaded guilty and waived a presentence report; he was then placed on probation and later sentenced to the penitentiary upon a revocation of probation. No presentence report was compiled for his sentencing upon a revocation of probation, although a hearing in aggravation and mitigation was conducted. The court concluded that such report was mandatory unless expressly waived.

Conversely, the defendant in *People v. Handlon* (1976), 40 Ill. App. 3d 959, 353 N.E.2d 278, *appeal denied* (1976), 64 Ill. 2d 597, also pleaded guilty and waived his right to a presentence report before being placed on probation which was later revoked. The defendant was then sentenced to the penitentiary. The appellate court concluded that a presentence report was not statutorily required upon revocation of probation since the statutory provision pertaining generally to sentencing was to be followed (Ill. Rev. Stat. 1975, ch. 38, par. 1005—4—1), and that section did not mandate a presentence report as did section 5—3—1 upon a finding of guilt. The court also noted that defendant had previously waived his right to such a report upon pleading guilty.

In summary, the decisions in *Comerford* and *Handlon*, which both involve situations comparable to the present case, appear to be in conflict. *Comerford* held that the statutory mandate of section 5—3—1 of the Unified Code of Corrections was clear and required that, unless properly waived, a presentence report be filed upon sentencing at a probation revocation proceeding. *Handlon* concluded that section 5—3—1 was not

directly applicable to situations which did not involve a finding of guilt such as a revocation of probation.

We are of the opinion that *Handlon* presents the more persuasive position in view of the fact that defendant in the present case does not argue that the 3-year sentence was excessive. The record shows that, aside from the burglary conviction, defendant had at least one misdemeanor conviction. Further, burglary, a Class 2 felony, establishes a minimum determinate term of 3 years incarceration. (Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1005—8—1(a)(5).) The trial court here imposed the minimum term of incarceration, unlike in *Comerford* where a term in excess of the minimum was given. Finally, under the circumstances, there is no basis to believe, and defendant does not contend, that any more lenient disposition would have resulted even if a presentence report had been compiled.

Accordingly, the judgment of the circuit court is affirmed.

Judgment affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.