THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD INGRAM, Defendant-Appellant.

Fourth District    No. 16711

Opinion filed April 22, 1981.

CRAVEN, J., dissenting.

Daniel D. Yuhas and Don L. Johnson, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Fahey, State's Attorney, of Danville (Robert J. Biderman and Debra A. Buchman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE MILLS delivered the opinion of the court:

We refuse to second-guess the trial judge.

True—the punishment is severe. However, it was imposed for the original offense and not for the violation of sentencing terms.

The fact that the trial judge attempted periodic imprisonment does not denigrate the gravity of the offense. It merely indicates that he was willing to give the defendant a chance.

But he "blew" it. Not once, but twice!

The record tells us that Ingram was originally charged with five felonies: one count of attempt murder, two counts of aggravated battery, and two counts of armed violence. After plea negotiations, he entered a negotiated plea of guilty to one count of aggravated battery and all of the other charges were dismissed. He was sentenced to serve 30 months of periodic imprisonment, was fined and ordered to pay restitution.

Three and one-half months later, Ingram was found to have violated his periodic imprisonment, was held in contempt and sentenced to 30 days' flat time. His periodic imprisonment was reinstated.

But six months later, following a hearing, Ingram's sentence of periodic imprisonment was revoked. He was then sentenced to serve four years' imprisonment.

We affirm.

On appeal, defendant argues that the State failed to prove violation of the terms of periodic imprisonment by a preponderance of the

evidence and, alternatively, that he was not given prior notice that the conduct at issue could be the basis for revoking his sentence.

No exhausting recitation of facts is required. The petition for revocation of periodic imprisonment alleged "That the defendant was not working on May 26, 1980, but was picnicking at the Forrest Glen Conservation Area." Defendant was released from the custody of the sheriff of Vermilion County so that he could go to his work at rewiring a house owned by Sally Williams. During the workday, in violation of Rule 6 of the periodic imprisonment rules of the sheriff's department, Ingram left his worksite and attended a picnic in the park with the Williams family. The uncontroverted testimony is that defendant was in the Forrest Glen Conservation Area on that date, that he drove his own vehicle to the park, that he was observed socializing with various persons, that he was observed playing frisbee, and that he was in the park area from approximately 12:50 p.m. to 4:30 p.m. Defendant himself admitted that he went to the park for lunch at about 11:30 a.m. and stayed there until approximately 3:30 p.m.

■■ The record clearly reflects that defendant was aware of the "Periodic Imprisonment Rules" of the sheriff's department (pursuant to section 5—7—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—7—1(a))), one of which—Rule 6—states: "Work release inmates shall, when released, proceed directly to their place of employment or school, and return as soon as possible by the most direct route." Contrary to defendant's argument, the State does not have to prove that defendant did not work at all on the date in question, but rather must prove that defendant was engaged on that date in an activity which was not work at a location which was not his assigned place of employment. It is clear from this record that the State met its burden.

This court will not disturb the findings of the trial court unless they are against the manifest weight of the evidence and thereby indicate an abuse of the trial court's discretion. *People v. Cooper* (1977), 66 Ill. 2d 509, 363 N.E.2d 817.

■■ As to defendant's alternative argument that he was not adequately informed of what would constitute a violation of the rules, and that he merely took an extended lunch hour since the rules do not indicate the length of the lunch break, we are not persuaded. The purpose in the rules of periodic imprisonment clearly prohibits an inmate from leaving his place of employment for an extended period of time under the guise of a long lunch hour. *Argumentum ad absurdum.*

Affirmed.

WEBBER, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

On review, the only question is whether the defendant's conduct on May 26, 1980, constituted a violation of his periodic imprisonment. Neither the punishment for the original offense nor the fact that there was a prior violation of periodic imprisonment terms has a thing to do with this case. The majority finds that the defendant violated the following rule: "Work release inmates shall, when released, proceed directly to their place of employment or school, and return as soon as possible by the most direct route." To bolster its conclusion that the defendant's conduct violated this rule, the majority extemporizes that the State "must prove that defendant was engaged on that day in an activity which was not work at a location which was not his assigned place of employment." The only authority for this proposition is the very words which create it. Under the majority's interpretation, work-release inmates cannot take time off to eat lunch away from the job site. This is an absurd interpretation that is not supported by the literal language of the rule or by any legal authority before this court.

The day the defendant allegedly violated the above rule was Monday, May 26, 1980, the day the State of Illinois celebrated Memorial Day. Sally Williams testified that on this day the defendant reported for work at her house at approximately 7:45 a.m. Defendant had been rewiring and remodeling her house for approximately the prior two months. Ms. Williams paid the defendant $100 per week for his work. However, she had paid him less a couple of weeks when he had had to work less than the full week because of court dates or a few odd jobs for his uncle.

That morning the defendant and Keith Doggett, Sally Williams' fiancé, worked on the Williams house. Ms. Williams and Doggett had promised to take their children, from prior marriages, on a picnic. Ms. Williams invited defendant to go with them to the park. As chronicled by the majority opinion, the defendant went with Ms. Williams, Doggett, and their children to the park. After the picnic was over, defendant returned to the Williams home and continued to work for a couple of hours until approximately 5:30 p.m. Ms. Williams paid the defendant the entire $100 for that week's work.

The above testimony of Ms. Williams was uncontradicted in any manner with the exception that one witness said that defendant was at the park at 4:30 p.m.—which would mean that the defendant could not have worked for a couple of hours upon return to the Williams house if he had left it at 5:30.

There was no evidence presented to show that the defendant did not go directly to the Williams house from the jail, nor does the evidence suggest that he did not go straight to the jail after he quit working at the Williams house on May 26, 1980.

The majority finds that the above evidence shows that the defendant violated the quoted work-release rule. Given the question on review, I fail to understand how or why this conclusion was reached.

I dissent.