THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
GEORGE WHITE, JR., Defendant-Appellant.

Third District    No. 3—88—0562

Opinion filed May 24, 1989.

HEIPLE, J., dissenting.

Shari D. Goggin-Ward, of State Appellate Defender's Office, of Ottawa,
for appellant.

James T. Teros, State's Attorney, of Rock Island (Terry A. Mertel, of
State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

The defendant, George White, Jr., pled guilty to burglary (Ill.
Rev. Stat. 1987, ch. 38, par. 19—1(a)) and was sentenced to a three-
year term of probation. The State subsequently filed a petition to re-
voke the defendant's probation, alleging that he had violated the

terms of his probation by committing an aggravated battery (Ill. Rev. Stat. 1987, ch. 38, par. 12—4(b)(1)). The trial court found the defendant guilty of violating his probation and sentenced him to four years in prison. The defendant appeals.

At the hearing on the petition to revoke the defendant's probation, LaRue Jackson testified to the following. On March 20, 1988, he, the defendant, and two other people were in a parked car. A fight broke out between the defendant and Jackson. The defendant then pulled out a knife and cut Jackson's right wrist. The defendant exited the car and started toward Vickie Micheal, who had exited the car on the opposite side. Micheal picked up a bottle and threw it at the defendant. The defendant picked up the same bottle and threw it back at the car, where it broke. The defendant then ran across the street and into an Elks Club.

Micheal testified that after the fight, the defendant exited the car and threw a soda bottle at her. In response, she threw a bottle at him. She then heard Jackson yell that he was cut. Micheal stated that Jackson never fell while he was outside the car. She admitted, however, that she could not see him when the bottles were being thrown. Though she saw the defendant make a jabbing motion at her, she never saw a knife. Micheal testified that the car's dome light was not working.

Debbie Davis, the remaining person in the car, testified that during the fight she was pinned against the steering wheel. At one point, she heard a click and blood splashed on her shirt. She then saw the defendant holding a knife. After she, the defendant, and Micheal exited the car, she saw the defendant and Micheal throwing bottles at one another and saw a bottle break. She stated that she could see by the glow from the car's dome light that Jackson's arm was already hurt when he exited the car.

Laura Beers testified for the defense that at the time of the incident she was parked five or six cars behind the car in question. She saw the fight and saw the defendant exit the car. Jackson then got out of the car, and he and the defendant began throwing bottles at one another. She heard at least one bottle break, but could not tell where it was. At one point, she saw Jackson fall. She never saw a knife in the defendant's possession.

The defendant testified that after he exited the car Jackson got out. Jackson threw three bottles at him, and he threw two bottles at Jackson. He saw Jackson try to dodge the bottles and saw him fall where the bottles had broken. The defendant denied having a knife or stabbing Jackson.

Following closing arguments, the trial judge examined the cut on Jackson's arm. The judge discussed the discrepancies between the witnesses' testimonies, then turned to the physical evidence. He noted that the wound had been caused by either a knife or a piece of broken bottle and stated:

"Now the Court can take into account its own observations and experiences of life. Most broken bottles [are] round—if there is a flat part it's on the bottom and normally when a bottle breaks it doesn't break in a perfectly straight line.

Glass tends to break in a jagged fashion. The Court notes the position of the wound. The wound is not on the palms. It's not on the heel of the palms. It's down two and a half to three inches down the wrist. One would think that if a man fell the likely thing to do would be to put your palms out and break the fall. That's not where the cut is. The cut is at a place further down the wrist.

The nature of the cut—it's a straight cut. I described it earlier as about an inch and a half to about an inch to three quarters in length, not the type that one would think would be made with a round bottle. It doesn't add up. If it was made by a piece on the bottom I might expect a straighter cut but I would expect it to be more jagged. This is a fairly straight cut."

The court next considered the testimony regarding the location of Jackson's blood in the car and its opinion of the credibility of the witnesses. It thereafter held that the State had proved the charge by a preponderance of the evidence.

■ On appeal, the defendant argues that he was denied due process of law when the trial judge based his decision in part on the differences between glass and knife cuts, since this information was not in evidence. The State contends that the defendant waived this issue by failing to object at trial. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) We find that plain error is involved in this case and address the issue pursuant to Supreme Court Rule 615(a) (107 Ill. 2d R. 615(a)).

The State further contends that the judge was doing nothing more than considering the evidence in light of common knowledge and the ordinary observations of life. (Illinois Pattern Jury Instructions, Criminal, No. 1.01(10) (2d ed. 1981); *People v. Schaffner* (1943), 382 Ill. 266, 46 N.E.2d 989.) The defendant replies that a determination made by a judge based upon a private investigation or private knowledge, untested by cross-examination or any of the rules of evi-

dence, constitutes a denial of due process of law. (*People v. McBride* (1987), 157 Ill. App. 3d 955, 510 N.E.2d 1087.) He argues that the conclusions reached by the judge required an expert's knowledge of glass and knife cuts and were not within the knowledge of the ordinary layman.

■ We agree with the defendant. The ability to examine a cut and determine the instrument that made it is beyond the province of common knowledge. The parties could only have introduced this evidence through a qualified expert. Accordingly, the trial judge erred in considering facts not in evidence in entering his judgment. Further, we find that the judge spent a significant part of his analysis of the evidence on the distinction between glass and knife cuts. Given that fact and the overall weight of the evidence, we cannot find that the error was harmless and must therefore reverse the trial court's decision. We note that we find no merit in the State's argument that the defendant invited this error.

The judgment of the circuit court of Rock Island County is reversed, and the cause is remanded for a new hearing.

Reversed and remanded.

SCOTT, J., concurs

JUSTICE HEIPLE, dissenting:

In reversing the trial court's determination that the defendant violated his probation, the majority has ignored the direct evidence presented. Moreover, it has, in effect, retried the case on the basis of the typed record. Thereby, it has wrested from the trial court its duty and power to resolve conflicts in the evidence presented. Accordingly, I dissent.

Initially, it is important to note that the burden of proof in a probation revocation proceeding is different than in a criminal trial. The State in a revocation proceeding need only prove that the defendant violated the terms of his probation by a preponderance of the evidence. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—6—4.) The trial court, sitting as the trier of fact, is entitled to weigh the evidence and assess the witnesses' credibility, and its determination will not be set aside unless it is manifestly erroneous. (*People v. Martin* (1979), 76 Ill. App. 3d 765.) The evidence presented at the hearing below was more than sufficient to support the court's revocation of the defendant's probation.

The victim testified that while he and the defendant struggled in

the backseat of the car, he heard a click he assumed was a knife, and the defendant cut his wrist. He stated that blood stains remained in the back of the car by the door and on the floor, and that when his sister drove him to the hospital, his blood also dripped on the front floor of the car. The victim's sister, Vickie, testified that she heard her brother yell that he had been cut after he struggled with the defendant, and she stated that the defendant usually carried a knife. The victim's other sister, Debbie, confirmed the victim's testimony that while he and the defendant struggled, a clicking noise could be heard, and blood splashed on her. She further testified that she saw the defendant with a knife. The defendant and a defense witness testified that the victim fell in an area containing broken glass after he exited the car, but the remaining witnesses denied that the victim fell to the ground.

In finding that the State proved its charge by the preponderance of the evidence, the trial judge noted the contradictions in the testimony and he pointed out that he found it strange that in over 14 years on the bench, this defendant was the first who did not once look at him during his testimony. The judge then considered the nature and location of the victim's wound and unrefuted testimony that there was blood in the backseat area of the car, which could not be explained if the victim was cut when he fell after getting out of the car. Finally, the court stated it found the testimony of the victim and Vickie more believable than the defendant's testimony in light of the physical evidence and in light of the manner of the defendant while on the witness stand.

The trial court did not err when it commented on the nature of the victim's wound and noted that because it was a fairly straight cut, it did not appear to be the type of wound which would result from contact with a jagged piece of glass from a broken bottle. In making these comments, the court was doing nothing more than considering the evidence in view of common knowledge and the ordinary experiences and observations of life. It is well established that triers of fact are accorded the right to consider evidence in light of their intelligence, common knowledge, and the experience of mankind. (*People v. Schaffner* (1943), 382 Ill. 266.) Accordingly, the trial court's comments in this case were proper.

Even if the trial court erred in considering whether the victim's wound could have been inflicted by a piece of glass, any error was harmless. Contrary to the majority's statement, the court did not spend a significant part of its analysis on the distinction between glass and knife cuts. Rather, the comments on the type of cut were

brief and were intertwined with the court's observations regarding the location of the wound, 2½ to 3 inches up from the wrist and not on the palm, which suggested it was not sustained during a fall to the ground. Furthermore, the court's comments demonstrate a thorough analysis of the remaining evidence, including the defendant's inability to explain the blood in the backseat, and a thoughtful determination of the credibility of the witnesses. Considering the court's assessment of the witnesses' credibility and the weight of the evidence presented, it cannot be said that the trial court's determination was manifestly erroneous.

For the foregoing reasons, I would affirm the judgment of the trial court.