THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LORENZO P. COOPER, Defendant-Appellant.
Fourth District   No. 12982

Opinion filed April 8, 1976.

SIMKINS, J., dissenting.

Richard J. Wilson and Theodore A. Gottfried, both of State Appellate Defender's Office, of Springfield, for appellant.

Richard J. Doyle, State's Attorney, of Danville (G. Michael Prall, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

In 1971, Lorenzo P. Cooper pleaded guilty to a charge of arson and was sentenced to 3 years' probation, the first 6 months of which were to be served in confinement. On July 13, 1974, with the 6 months served and less than 8 months' probation left to run, defendant became involved in a disturbance which lead to the  revocation of his probation. Defendant here appeals the trial court's decision to revoke his probation, contending

there was insufficient evidence at the hearing on the violation petition to establish his guilt of the offenses charged by a preponderance of the evidence.

Evidence at the hearing established that defendant and his wife were in the Pizza Inn in Danville, Illinois, waiting for a pickup pizza, when defendant noticed Leamon Covington staring at him. There was apparently an exchange of glances between the men which lasted several minutes. Covington then picked up a takeout pizza and prepared to leave, but paused long enough to set down the pizza, pound his palm with a clenched fist, and say "you make me sick" to the defendant.

After Covington left, defendant went out to his car, removed an unloaded .38-caliber pistol from the trunk and put it under his shirt, and reentered the Pizza Inn to wait for his order. Defendant testified that he got the gun because the Pizza Inn was crowded, he and his wife were the only black people there, and he was nervous. Though a Pizza Inn employee testified he thought another black person reentered the restaurant with defendant, the same witness admitted the second person might have been a woman. The defendant estimated Covington's height at 6 foot 7 or 8 inches; another witness thought Covington was only about 6 foot 3 inches, but estimated he outweighed the 5 foot 10 inch defendant by about 80 pounds.

Defendant and his wife both testified that as defendant stood by the counter paying for his pizza, he was suddenly struck from behind by Covington. The Pizza Inn employee testified he did not see who struck the first blow but that "everything happened so quick that both reactions seemed like they went off at the same time." Defendant admitted pulling the gun from beneath his shirt as soon as he was able to do so and started to beat Covington back. He said he hit Covington in the side of the head with the gun as many times as he could. Defendant's wife also entered the fracas, hitting Covington with a tray. The Pizza Inn employee testified that Covington was attempting to get control of the gun during most of the struggle.

The record does not reveal whether someone broke up the fight or whether defendant retreated on his own. The next event reflected in the record is the arrival of a Danville police officer who saw Covington coming toward him with blood streaming down his face. As the officer stood in front of the Pizza Inn trying to gather information about the incident, defendant pulled into the parking lot and got out of his car screaming. The officer could not make out what defendant was saying; defendant himself testified he repeatedly yelled, "I want that man arrest."

As a result of the incident at the Pizza Inn, a motion to revoke defendant's probation was filed, charging him with unlawful use of weapons, criminal damage to property, armed violence and aggravated battery. The charge of criminal damage to property was directed out by the court at the hearing.

■■■ The armed violence charge hinged on the defendant's guilt of aggravated battery. Hence, we will discuss the two as one issue. Defendant had the same protection that would be afforded any citizen by section 7—1 of the Criminal Code, which says:

"A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." (Ill. Rev. Stat. 1973, ch. 38, par. 7—1.)

The record fails to reveal much about the degree of force used by defendant to repel Covington's attack. While he testified he hit Covington as many times as he could, we do not know how hard he struck, how long the struggle continued, or who interrupted the fight. Covington's injuries were apparently not severe, the worst of them being a large gash which required stitches and may leave a scar. Moreover, it is not at all clear from the record how the parties extricated themselves from the fight. There was testimony that Covington tried to take the gun from defendant, who may have feared the larger and stronger Covington would use the gun against him if he gained control of it. While defendant testified that he taught wrestling and boxing, there is nothing in the record on which this court could base an evaluation of the relative strength and agility of the two parties. With no evidence to show how much force was necessary on the defendant's part to repel Covington's initial attack and protect himself from bodily harm, we cannot say it was established by a preponderance of the evidence that he used more force than necessary to do so. Consequently, we cannot affirm the revocation of defendant's probation on the grounds of aggravated battery or armed violence.

■■ Turning to the weapons charge, we note the State was required to establish by a preponderance of the evidence that defendant knowingly:

"Carrie[d] OR possesse[d] WITH INTENT TO USE THE SAME UNLAWFULLY AGAINST ANOTHER * * * any * * * dangerous or deadly weapon or instrument of like character;" (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a)(2).)

The undisputed evidence was that defendant procured the weapon from his car only after Covington's threatening gesture and only out of fear for his own safety and that of his wife. That his fear was reasonable is amply demonstrated by Covington's reappearance and unprovoked attack from behind. Given the gross disparity in the sizes of the individuals involved and the fact that defendant and his wife were apparently the only, or virtually the only, black people in a crowded restaurant, this record will

not support a claim that defendant's intent to use the weapon unlawfully was established by a preponderance of the evidence. The circumstances surrounding the fight and the actual use of the gun tend rather to show that he brought it in and kept it on his person only for purposes of self-defense.

Finding in the record no support for the trial court's finding of unlawful use of weapons, aggravated battery or armed violence, we reverse the revocation of probation.

Reversed.

GREEN, J., concurs.

Mr. JUSTICE SIMKINS, dissenting:

The hearing was on the State's petition to revoke defendant's probation. The State was, therefor, required to establish the commission of these offenses by a preponderance of the evidence. The majority opinion states that the record does not establish the "degree of force used" nor "how hard" the defendant struck Covington nor how long the fight continued, and that the injuries were apparently not severe.

The witness Bredholt testified that after the fight was ended Covington had a lot of redness around his eyes, there was redness and blood on top of his head, and a cut above one eye; and that the fight lasted a matter of minutes.

Officer Cranmore testified that on his arrival at the scene he observed Covington who had blood streaming from his face, and that he later viewed Covington at the hospital and observed cuts all over his face and running through his hair. The officer took pictures of Covington, one of which was introduced into evidence and shows the extent of the injuries.

There would appear to be no better means of determining the degree of force used than to observe the resulting injuries. This evidence was sufficient to establish the degree of force used. The record does establish a disparity in size between defendant and Covington. This does not preclude a judgment that the smaller defendant used more force than he could have reasonably believed to be necessary to defend himself. The court could also consider that the defendant was skilled in wrestling and boxing. Additionally, in view of the fact that there is no evidence in the record that defendant sustained any injury in the fight, the trial judge had evidence before him which would support a conclusion that the defendant used force likely to cause great bodily harm to Covington under circumstances in which he could not be said to have reasonably believed that such force was necessary. The issues were questions of fact to be resolved by the trial judge. (*People v. White*, 93 Ill. App. 2d 283, 235 N.E.2d 393; *People v. Wood*, 24 Ill. App. 3d 15, 320 N.E.2d 32.) The evidence is sufficient to support the finding that defendant was guilty of aggravated battery.