THE PEOPLE OF THE STATE OF NEW YORK ex rel. HAYWARD NEWCOMB, Appellant-Respondent, v PAUL METZ, as Superintendent of Great Meadow Correctional Facility, et al., Respondents-Appellants.

Third Department, October 19, 1978

## APPEARANCES OF COUNSEL

*Lewis B. Oliver, Jr., Regina R. Quattrochi* and *Daniel Stein-bock* for appellant-respondent.

*Louis J. Lefkowitz, Attorney-General (Frederick R. Walsh* and *Ruth Kessler Toch* of counsel), for respondents-appellants.

## OPINION OF THE COURT

LARKIN, J.

The petitioner is an individual who, as appears from this record has had a history of mental illness. His maximum period of imprisonment for various felony convictions expires in 1984. After serving approximately 10 years in Dannemora State Hospital, he was transferred to Clinton Correctional Facility and then paroled on May 31, 1972. Only July 1, 1975 he was arrested upon charges of three violations of parole: (1) failure to report to his parole officer; (2) failure to secure employment and (3) behavior which had become a menace to the safety of his family and others.

After lengthy administrative and judicial proceedings relative to petitioner's parole revocation, a final parole revocation hearing was scheduled for September 20, 1977. Petitioner's counsel sought to produce medical testimony regarding petitioner's mental incompetency, both as it pertained to his fitness to proceed with the hearing and his understanding of the nature of his actions which led to parole revocation. The board refused to proceed on the grounds that it had no statutory authority to make a determination of mental competency and that there could be no final revocation hearing until the competency issue had been resolved. The judgment which is the subject of this appeal was rendered upon an application for habeas corpus which was essentially based upon the failure of the board to afford petitioner a parole revocation hearing as mandated by statute (Executive Law, § 259-i, subd 3) and regulation (7 NYCRR Part 1925).

By the judgment which is the subject of this appeal Special Term ordered an examination of the petitioner by two certified psychiatrists pursuant to section 402 of the Correction Law. If the psychiatrists both certified petitioner as mentally ill and in need of care and treatment, the court directed the Superintendent of Great Meadow Correctional Facility to petition for an order of commitment to a hospital for the mentally ill in accordance with section 402 of the Correction

Law. This statute affords the person whose mental condition is in issue with extensive due process rights including notice in writing, a hearing, a judicial determination and, upon appeal, either a jury determination or a second judicial decision. Finally, Special Term directed that if petitioner were found to be mentally ill but not requiring confinement in a mental hospital, he be released on parole upon condition that he participate as an outpatient in an appropriate course of treatment prescribed by the Department of Mental Hygiene.

■ Initially, we note that it is well established that habeas corpus is a proper remedy for review of parole revocation proceedings *(People ex rel. Menechino v Warden, Green Haven State Prison,* 27 NY2d 376; *People ex rel. Warren v Mancusi,* 40 AD2d 279).* The petitioner's arguments under CPLR 7010 (subd [a]) to the contrary, it is clear from the cases in which the courts have examined parole revocation proceedings in the context of habeas corpus that a determination favorable to petitioner does not necessarily require his discharge from custody *(id.,* see, also, *People ex rel. Hutchings v Smith,* 50 AD2d 1097, app dsmd 38 NY2d 904; cf. *People ex rel. Kamenstein v Beckenstein,* 26 AD2d 669).

The primary issue which must be decided by this court is whether due process mandates consideration of a person's mental competency in the context of the parole revocation process. Other issues have been presented by the parties, but in view of our determination to remand this application for further administrative proceedings we do not consider these questions at this time.

The respondents have taken the position that they have no statutory authority to determine mental competency in the context of a parole revocation proceeding, that such a determination is unnecessary and that they will not proceed if the petitioner insists upon such determination. We find no New York cases dealing with the relationship between mental competency and parole revocation in such a way as to be applicable to the facts of the case at hand. Accordingly, we must be guided by general principles applicable to parole revocation as enunciated by the New York Court of Appeals and by the United States Supreme Court.

In *People ex rel. Menechino v Warden, Green Haven State Prison (supra),* in holding that the due process clause of the New York Constitution (NY Const, art I, § 6) guaranteed the right to counsel at a final parole revocation hearing, the Court

of Appeals characterized the parole revocation process as "an accusatory proceeding in which the outcome—liberty or imprisonment—is dependent upon the board's factual determination as to the truth of specific allegations of misconduct * * *. It involves a deprivation of liberty just as much as did the original criminal action" *(People ex rel. Menechino v Warden, Green Haven State Prison, supra,* p 382). The United States Supreme Court, however, took a narrower view of the rights afforded in a parole revocation proceeding: "[R]evocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations" *(Morrissey v Brewer,* 408 US 471, 480). Subsequently, the United States Supreme Court, applying a test of "fundamental fairness", held that there was only a discretionary right to counsel at both preliminary and final parole revocation hearings, with the decision to be made on a case-by-case basis. While New York has codified the right to counsel set forth in *People ex rel. Menechino v Warden, Green Haven State Prison (supra)* (Executive Law, § 259-i, subd 3, par [f], cl [V]) with respect to other due process rights, the scope of the State Constitution has been held to be coextensive with the Federal Constitution *(People ex rel. Colloway v Skinner,* 33 NY2d 23).

■ In our view, absent statutory authority to the contrary, the interests of fundamental fairness mandate a consideration of a person's mental competency during the parole revocation process. While the commission of new crimes provides ample justification for the revocation of parole despite the parolee's incompetency to stand trial *(Knight v Estelle,* 501 F2d 963), it is our conclusion that the Board of Parole should at least consider an alleged parole violator's lack of mental competency as a mitigating factor when considering violations of parole which, as those in the instant case, are primarily of a technical nature.

The question then presented is at what point and in what manner the determination of mental competency should be made. Special Term, in a well-considered opinion, concluded that the issue should be determined prior to the holding of the final parole revocation hearing in accordance with the procedures contained in section 402 of the Correction Law. While this approach has considerable merit, it is our opinion that Special Term's use of this statute, which places the responsibility for initiating proceedings to commit mentally ill in-

mates upon the prison administrators, not the courts, constituted an unwarranted interference with the administrative system as established by the Correction Law and the Executive Law. The further direction of Special Term, ordering the release of petitioner to parole supervision, upon specified conditions, if he were found to be mentally ill but not requiring confinement to a mental hospital, was similarly violative of the administrative prerogative.

It is our conclusion the due process standard of fundamental fairness mandates that the petitioner's mental competency be considered, among all other relevant factors, by the Board of Parole in conducting parole revocation proceedings under subdivision 3 of section 259-i of the Executive Law and 7 NYCRR Part 1925. Contrary to the opinion of Special Term, however, a determination of this question is not a condition precedent to the parole revocation proceeding, but merely a factor to be considered in mitigation of, or as an excuse for, charged violations of parole. The present statutory and administrative structure allows the Board of Parole great discretion and flexibility in determining the treatment of an alleged parole violator (Executive Law, § 259-i, subd 3, par [f], cl [X]; 7 NYCRR 1925.35 [k]). It was error for Special Term to interject itself into this area where administrative discretion is both provided for and warranted (1 NY Jur, Administrative Law, § 195).

The judgment should be reversed, on the law and the facts, without costs; the writ should be dismissed and the matter remitted to the Board of Parole for further proceedings not inconsistent herewith.

SWEENEY, J. P., STALEY, JR., MAIN and MIKOLL, JJ., concur.

Judgment reversed, on the law and the facts, without costs; writ dismissed, and matter remitted to the Board of Parole for further proceedings not inconsistent herewith.