THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RICHARD ALLEN DIERCKS, Defendant-Appellant.

Fifth District   No. 79-330

Opinion filed September 24, 1980.

Gerald S. Sims, Jr., of Pinckneyville, for appellant.

William A. Schuwerk, Jr., State's Attorney, of Chester (Martin N. Ashley and Gaye A. Bergschnieder, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

The defendant, Richard Allen Diercks, was charged with burglarizing the First Baptist Church of Sparta. Diercks was convicted for burglary in 1978 and was placed on probation. A petition to revoke defendant's probation was filed on April 20, 1979. After a hearing in the Circuit Court of Randolph County, defendant was found to have violated the terms of his probation and was sentenced to three years in the Department of Corrections.

On appeal, Diercks argues that his conviction should be reversed because of two errors committed by the trial court. First, he contends that the trial judge erred in refusing to suppress allegedly involuntary statements admitting his guilt made to the police. Second, defendant maintains that privileged statements made to a clergyman were erroneously admitted as evidence.

On March 30, 1979, the First Baptist Church of Sparta was broken into and two unauthorized long distance calls were made by the intruder. On April 19, 1979, the defendant was arrested for the burglary of the church. The defendant was taken to the Sparta Police Department where he was read a *Miranda* warning. The record contains no detail as to the substance of the warning. Immediately afterwards the defendant acknowledged being given the warning but did not make any statement at that time.

Subsequently, the defendant was taken to the Randolph County jail. At the jail, the following morning, Deputy Sheriff Malott attempted to give Diercks a second *Miranda* warning but was cut short by the defendant. Diercks explained that he had been previously warned by the Sparta police and that he understood his rights. Malott proceeded to question Diercks about the burglary. During the course of the questioning Malott told Diercks that anything the defendant said "* * * was between he and I." While the questioning was going on Diercks made several incriminating statements. Those statements were admitted at the revocation proceeding over the defendant's pretrial motion to suppress, which was denied.

In addition to speaking with Deputy Sheriff Malott, Diercks spoke with Reverend John Welch in the Randolph County jail. Reverend Welch was the minister of the First Baptist Church of Sparta and testified as to the details of the break-in. The Reverend was also allowed to testify as to conversations with the defendant in which Diercks admitted his culpability. During two of Reverend Welch's talks with the defendant, Ronnie Johnson, defendant's employer and landlord, accompanied the Reverend.

The defendant claims that admission of the statements made to Deputy Sheriff Malott and to Reverend Welch is reversible error. As to the

former statement, it is argued that the statement was involuntary because of several factors including a promise of leniency or benefit, the absence of counsel during questioning, the duration of the detention prior to interrogation, and the failure to show a knowing waiver of constitutional rights.

■■ Under Illinois law the finding by the trial court that a statement was voluntary will not be disturbed unless contrary to the manifest weight of the evidence. (*People v. Pickerel* (1975), 32 Ill. App. 3d 822, 336 N.E.2d 778.) It is the State's burden to prove by a preponderance of the evidence that the confession was voluntarily given. *People v. Genus* (1979), 74 Ill. App. 3d 1002, 393 N.E.2d 1162.

The test to determine if a confession is voluntary was reiterated recently by this court. In the case of *In re J. A. G.* (1979), 75 Ill. App. 3d 177, 181, 393 N.E.2d 1207, 1210, we said, "A determination whether a confession is voluntary depends not on any one factor, but upon the totality of the circumstances surrounding the giving of the statement." Therefore, we must look at the above factors cited by the defendant collectively to see whether the contested statement was made freely and voluntarily or whether the defendant's will was overcome at the time he confessed. (*In re J. A. G.* (1979), 75 Ill. App. 3d 177, 181, 393 N.E.2d 1207, 1211.) Only after that determination is reached can a ruling as to the statement's admissibility be made.

The primary argument made by the defendant is that Deputy Sheriff Malott improperly promised Diercks a benefit, confidentiality, in order to induce the defendant's confession. The defendant relies upon our decision in *People v. Bell* (1977), 50 Ill. App. 3d 82, 365 N.E.2d 203, for the proposition that statements induced by fifth amendment violations are inadmissible at probation revocations. The *Bell* case is not on point. It held that all material witnesses to an allegedly involuntary confession must be produced at a probation revocation. There is no allegation of absent material witnesses in the instant case. The only contention here is the likelihood that the promise of confidentiality induced an involuntary confession.

Viewing the record as a whole we do not think the trial court's judgment finding the defendant's statement voluntary was against the manifest weight of the evidence. One factor to be considered is the character of the accused. The record does not disclose any disabling characteristics which would make Diercks susceptible to coercion. Another consideration is that the defendant has had prior contact with the authorities; the court took judicial notice of the prior appearances of the defendant in other cases, at least one of which included a written explanation of the *Miranda* warnings and a signed waiver. Also important

is the fact that the defendant requested that he not be given his rights again by Malott, indicating he had previously been warned by the Sparta police and that he understood his rights. All of these factors point to one conclusion. Malott's promise of confidentiality did not operate to deprive Diercks of his free will and Diercks' statement was voluntary under the totality of the circumstances.

The defendant argues that other facts operated to make his confession to Malott involuntary, including incarceration for a period of 24 hours and the absence of counsel. There is no contention on appeal that the defendant's arrest was improper. Also, there is no contention that the defendant requested a lawyer but his request was improperly refused. Without more these are merely facts to consider in the totality of circumstances. The defendant's previous appearances with counsel along with prior *Miranda* warnings were sufficient to prevent Diercks from being compelled to give an involuntary statement.

The final contention made by Diercks is that there was no showing made as to the specific warnings given to him, therefore, the State did not prove a knowing and intelligent waiver of the defendant's rights. The defendant relies on *People v. Morgan* (1977), 69 Ill. 2d 200, 370 N.E.2d 1063. However, an important difference distinguishes this case from *Morgan*. *Morgan* involved a criminal trial and not a probation revocation. Not all of the protections guaranteed in a criminal adjudication of guilt are extended to probation revocations. *People v. Peterson* (1978), 74 Ill. 2d 478, 384 N.E.2d 348.

While involuntary statements would be excluded under *Peterson*, statements subsequently given after a technical *Miranda* violation are admissible. The failure to specify the exact contents of the warnings given is, in our opinion, a technical violation under the reasoning of *Peterson*. The *Miranda* warnings are prophylactic safeguards, and their violation does not necessarily mean a subsequent statement was obtained involuntarily. As has been noted previously, the defendant's prior criminal experience, his acknowledgement of previous warnings and absence of any disability all indicate that Diercks' statement to Malott was voluntary. Under these circumstances, we cannot say that the trial judge's admission of Diercks' statement was against the manifest weight of the evidence.

The second issue raised by the defendant is whether his statement admitting culpability to Reverend Welch was introduced in violation of the priest-penitent privilege. The privilege is codified in "An Act relating to communications to clergymen and practitioners of religious denominations" (Ill. Rev. Stat. 1979, ch. 51, par. 48.1) (hereinafter the Act).

The Act provides that "A clergyman, or priest, minister, rabbi or

practitioner of any religious denomination accredited by the religious body to which he belongs, shall not be compelled to disclose in any court, or to any administrative board or agency, or to any public officer, a confession or admission made to him in his professional character or as a spiritual advisor in the course of the discipline enjoined by the rules or practices of such religious body or of the religion which he professes, nor be compelled to divulge any information which has been obtained by him in such professional character or as such spiritual advisor." We do not believe that the statements made to Reverend Welch were privileged.

The State argues that no privileged relationship existed between the defendant and Reverend Welch. The State argues in the alternative that the presence of a Ronnie Johnson destroyed the privileged nature, if any, of the conversation between Diercks and Reverend Welch.

■■ Before evidence is excluded as privileged the party asserting the privilege must establish all of the privilege's constituent elements. (8 Wigmore, Evidence §2192, at 73 (McNaughton rev. 1961).) The State contends that no privilege was established because Diercks did not institute the communication with Reverend Welch, was not a member of the Reverend's congregation, and did not indicate that he was seeking spiritual guidance when the disclosures were made. None of these factors are required by the wording of the Act before the privilege attaches, but we need not decide whether they should be read into the Act.

What is required by the Act is that the disclosure be "* * * enjoined by the rules or practices of such religious body" before the privilege attaches. It was not established by the defendant that the disclosure of Diercks' confession by Welch would be enjoined by the rules or practices of the Baptist Church. We think that the State's objection to the existence of the privilege is sufficient to raise the point for review.

■■■ The actions of Reverend Welch would indicate that no privilege existed. The Reverend went to see the State's Attorney after talking with Diercks, and he made no attempt to claim any type of privilege or object to disclosure when asked to testify at the revocation hearing. (*Cf. People v. Pecora* (1969), 107 Ill. App. 2d 283, 299, 246 N.E.2d 865, 873, *cert. denied* (1970), 397 U.S. 1028, 25 L. Ed. 2d 538, 90 S. Ct. 1274 (priest objected).) When the clergyman does not object to testifying the burden is on the person asserting the privilege to show that disclosure is enjoined by the rules or practices of the relevant religion. Inasmuch as one of the foundation requirements for the privilege was not demonstrated, admission of Reverend Welch's testimony did not violate the defendant's rights under the Act and was not reversible error.

■■ Even if the Act did create a privileged relationship between Diercks and Reverend Welch, the privilege was destroyed by the presence of

Ronnie Johnson. The defendant argues that the State did not prove Johnson's presence when the admission was made; therefore, the admission should be privileged. As stated earlier, the one who asserts a privilege must establish all elements before it can be successfully invoked. Thus, the defendant's position improperly requires the State to disprove the existence of one element of the privilege. As with the attorney-client privilege, the priest-penitent privilege only attaches when the communication is made in confidence. *Cf. People v. Werhollick* (1970), 45 Ill. 2d 459, 259 N.E.2d 265 (no attorney-client privilege when information is disclosed to non-privileged third party); see also Annot., 71 A.L.R.3d 794, 808-09 (1976).

Inasmuch as the defendant failed to establish that Diercks' admission was made solely in the presence of Reverend Welch, the trial judge could infer that the disclosure was made while Johnson was present. Such a finding is not against the manifest weight of the evidence and will not be disturbed on appeal.

Finally, the defendant argues that Johnson should be considered an assistant of Reverend Welch and thus fall within the scope of the Act. An argument similar to that made by defendant was considered in *In re Verplank* (C.D. Cal. 1971), 329 F. Supp. 433. Counselors regularly assisting a clergyman were found to be within the penumbra of the priest-penitent privilege. We decline to follow the holding in that case because of basic factual differences.

■ In *Verplank* lay counselors were regularly engaged in draft counseling with Reverend Verplank and were found to be necessary to assist him because of the number of people requiring counseling services. In contradistinction, the services of Johnson were not shown to be required by Reverend Welch. Also, there was no evidence that Johnson regularly engaged in aiding Reverend Welch in giving spiritual advice. Thus, there was no showing that the assistance of Johnson was indispensable to the work of Reverend Welch in counseling Diercks. Such a showing of indispensability is necessary before a privilege is extended to nonprofessional representatives. (*Cf.* 8 Wigmore, Evidence §2301, at 583 (McNaughton rev. 1961) (communication to attorney's law clerk is privileged).) Therefore, we find that Johnson does not come within the reasonable scope of the Act, and that his presence destroyed the existence of any privileged relationship between Diercks and Reverend Welch.

For the foregoing reasons, the judgment of the Circuit Court of Randolph County is affirmed.

Affirmed.

JONES, P. J., and SPOMER, J., concur.