THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ANITA ALLEGRI, Defendant-Appellant.

Fourth District   No. 4—83—0780

Opinion filed September 28, 1984.

TRAPP, J., dissenting.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Robert J. Biderman and Rebecca L. White, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MILLER delivered the opinion of the court:

██ The issue on appeal is whether defendant's inability to conform her conduct to the requirements of the law is a defense in a probation revocation proceeding based upon acts which constitute a criminal offense. We find insanity is not an available defense in probation revocation. Therefore, we affirm the trial court's decision.

On November 30, 1982, Anita Allegri pleaded guilty to the offense of unlawful restraint. (Ill. Rev. Stat. 1981, ch. 38, par. 10—3(a).) The substance of the offense was that she had attempted to take a two-year-old boy away from his father. Allegri was placed on 30 months' probation conditioned upon incarceration in the Champaign County correctional facility as a work-release prisoner. She was ordered not to violate any State laws and to report on a regular basis for psychological counseling. On May 4, 1983, a petition to revoke Allegri's probation was filed. It alleged Allegri had violated a condition of her probation by knowingly detaining 13-year-old William Norman without legal authority. (Ill. Rev. Stat. 1981, ch. 38, par. 10—3(a).) On August 31, 1983, a hearing was held on the petition. The evidence established that on February 20, 1983, Allegri detained Norman at the Lincoln Square Mall in Urbana. She grabbed his wrist and told him to write his name on a piece of paper. In addition, he was told to write "Mind Control." Testimony established that Allegri spoke of lasers, mind control, and feared her thoughts were being broadcast to the community. She also was afraid the police were trying to shoot her. Shortly after her arrest for this incident, she was transferred to a mental health facility.

Allegri established the insanity defense. A psychiatrist testified that, in his opinion, at the time of the second offense Allegri was unable to conform her conduct to the requirements of the law due to the mental disease of paranoid schizophrenia and a paranoid personality disorder. He stated that had she been properly medicated in February she probably would not have committed the acts leading to revocation.

The trial court ruled that because of the nature of probation revocation proceedings, applicability of the insanity defense was not constitutionally mandated. It also determined the defense was not statutorily available. However, it stated that if the defense was available, the State had not met its burden of rebutting it. After a sentencing hearing, held before a different judge, Allegri was sentenced to an additional term of 30 months' probation. She was ordered to cooperate fully with a psychiatrist and the Department of Mental Health.

Defendant argues insanity is an available defense. She contends that the trial court unduly relied upon section 5—2—4 of the Unified Code of Corrections in reaching its decision. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4.) She maintains that since the defense is not specifically made inapplicable to revocation proceedings, it applies. (Ill. Rev. Stat. 1981, ch. 38, par. 6—2(a).) At the outset, we note that the statutes deal with criminal conduct. Section 5—2—4 specifically addresses proceedings after "acquittal" by reason of insanity. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4.) Section 6—2(a) establishes an affirmative defense to "criminal" responsibility. Ill. Rev. Stat. 1981, ch. 38, par. 6—2(a).

■ A probation revocation proceeding is not a criminal adjudication. It does not determine guilt or innocence of an accused. (*Gagnon v. Scarpelli* (1973), 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756; *People v. Beard* (1973), 15 Ill. App. 3d 663, 304 N.E.2d 707, *aff'd* (1974), 59 Ill. 2d 220, 319 N.E.2d 745, *cert. denied* (1975), 421 U.S. 992, 44 L. Ed. 2d 483, 95 S. Ct. 1999.) The issue in a probation revocation proceeding is two-fold: first, whether a probation violation actually occurred, and second, whether the purposes of defendant's probation are being served by his continued liberty. (*People v. Dowery* (1974), 20 Ill. App. 3d 738, 312 N.E.2d 682, *aff'd* (1975), 62 Ill. 2d 200, 206, 340 N.E.2d 529, 531; *People v. Davis* (1984), 123 Ill. App. 3d 349, 462 N.E.2d 824; *United States v. Torrez-Flores* (7th Cir. 1980), 624 F.2d 776; *People v. Beard* (1973), 15 Ill. App. 3d 663, 304 N.E.2d 707.) Because of the noncriminal nature of the inquiry in revocation proceedings, statutes which address criminal responsibility and proceedings after acquittal are facially inapplicable.

The first step in statutory construction is ascertaining and giving effect to the intention of the legislature. Statutory language is the starting point of the analysis. (*People v. Boykin* (1983), 94 Ill. 2d 138, 445 N.E.2d 1174.) The language of section 5—2—4 does not refer to probation revocation. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4.) Similarly, the language of section 6—2(a) does not refer to noncriminal responsibility. (Ill. Rev. Stat. 1981, ch. 38, par. 6—2(a).) Generally, in

giving effect to the intent of the legislature, the court gives the language of the statute involved its ordinary meaning. (*Clement v. O'Malley* (1981), 95 Ill. App. 3d 824, 420 N.E.2d 533, *aff'd* (1983), 96 Ill. 2d 26, 449 N.E.2d 81.) The language is the best indication of intent. Where legislative intent can be gathered from the language, no resort to other sources of information is necessary. (*People v. Robinson* (1982), 89 Ill. 2d 469, 433 N.E.2d 674.) In this case, the trial court carefully considered the statutes. They do not mention the probation revocation circumstance. Considering the result of holding insanity applicable and the language of the statutes, the court decided it was not a statutory defense. We agree.

■ If insanity applied as a defense, the trial court would have no statutory authority to modify or revoke probation even though defendant's actions clearly establish a violation of probation and a frustration of its purposes. (Ill. Rev. Stat. 1981, ch. 38, pars. 1005—2—4, 1005—6—4.) Reading insanity into the statutes as a defense to revocation would create a contradictory situation for the trial court. This is not necessary. The language of the statutes excludes revocation. Language is the best evidence of legislative intent. Additionally, the statutes address criminal adjudications—not noncriminal ones. Therefore, the trial court correctly declined to read in insanity as a defense to revocation. *Droste v. Kerner* (1966), 34 Ill. 2d 495, 217 N.E.2d 73, *appeal dismissed, cert. denied* (1967), 385 U.S. 456, 17 L. Ed. 2d 509, 87 S. Ct. 612.

The operative question is whether, in the interests of fundamental fairness, inability to conform one's conduct to the requirements of the law should be a defense to probation revocation. Illinois courts have not considered this issue. However, insanity is a defense to criminal responsibility. (Ill. Rev. Stat. 1981, ch. 38, par. 6—2(a).) An understanding of the nature of probation is necessary as a preliminary matter. Probation is a privilege—not a right. The trial court has great discretion in granting or denying probation. (*People v. Seipel* (1969), 108 Ill. App. 2d 384, 247 N.E.2d 905, *cert. denied* (1970), 397 U.S. 1057, 25 L. Ed. 2d 675, 90 S. Ct. 1405.) Absent a clear showing of abuse, the decision of the trial court will not be overturned. *People v. Sims* (1965), 32 Ill. 2d 591, 208 N.E.2d 569.

In granting or denying probation, the trial court must balance competing interests. These interests reflect the purpose of probation. (*People v. Dowery* (1974), 20 Ill. App. 3d 738, 312 N.E.2d 682, *aff'd* (1975), 62 Ill. 2d 200, 340 N.E.2d 529.) Rehabilitation of a defendant without incarceration is an important purpose. Equally important is the protection of society from the type of activity that led to defend-

ant's being placed on probation. (*People v. Davis* (1984), 123 Ill. App. 3d 349, 462 N.E.2d 824; *People v. McClendon* (1970), 130 Ill. App. 2d 852, 265 N.E.2d 207.) The defendant, at the probation revocation stage, is always a convicted felon. *People v. Henderson* (1971), 2 Ill. App. 3d 401, 405, 276 N.E.2d 372, 375.

Because of the unique position of defendants at probation revocation proceedings, courts have held that the process due them is not the same as that due defendants initially standing trial for the substantive offense. In *Morrissey v. Brewer* (1972), 408 U.S. 471, 480-81, 33 L. Ed. 2d 484, 493-94, 92 S. Ct. 2593, 2599-2600, the Supreme Court noted the two-step analysis used in parole revocation. The first step is the factual determination of whether the acts occurred. The second is the determination of how to protect society while furthering the rehabilitative goals of parole. The court held that the parolee's liberty interest justified a measure of due process protection. However, because the parolee's liberty is conditional, the constitutional protection due him was not as strict as that due a nonconvicted person. In *Gagnon* the Supreme Court equated the liberty interest of a probationer with a parolee. *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 781-82, 36 L. Ed. 2d 656, 661-62, 93 S. Ct. 1756, 1759-60.

At a probation revocation proceeding, therefore, the defendant is in effect awaiting resentencing, not sentencing. The resulting lesser due process protection is reflected in a number of ways. In *Gagnon*, the court held counsel was not automatically mandated to due process concerns. However, it held that both preliminary determination of probable cause and a hearing on revocation were necessary. (*Gagnon v. Scarpelli* (1973), 411 U.S. 778, 781-82, 36 L. Ed. 2d 656, 661-62, 93 S. Ct. 1756, 1759-60.) The standard of proof is different in probation revocation proceedings. The State need only demonstrate by a preponderance of the evidence that the act giving rise to the petition occurred. (*People v. Crowell* (1973), 53 Ill. 2d 447, 292 N.E.2d 721; *People v. Clark* (1981), 97 Ill. App. 3d 953, 424 N.E.2d 9; Ill. Rev. Stat. 1981, ch. 38, par. 1005—6—4(c).) A defendant may have his probation revoked and subsequently be convicted for the substantive offense without double jeopardy being involved. (*People v. Smith* (1980), 87 Ill. App. 3d 526, 409 N.E.2d 157; *People v. Vahle* (1978), 60 Ill. App. 3d 391, 376 N.E.2d 766.) A defendant need not be indicted, prosecuted, or convicted of the offense forming the basis of the revocation proceeding. (*People v. Burkett* (1974), 19 Ill. App. 3d 410, 311 N.E.2d 748; see also *People v. Crowell* (1973), 53 Ill. 2d 447, 292 N.E.2d 721.) The act giving rise to the petition need not be criminal in nature. (*People v. DeWitt* (1978), 66 Ill. App. 3d 146, 383 N.E.2d

694, *aff'd* (1979), 78 Ill. 2d 82, 397 N.E.2d 1385.) Many of the evidentiary rules do not apply with full force to probation revocation proceedings. *People v. Dowery* (1974), 20 Ill. App. 3d 738, 312 N.E.2d 682; *People v. Diercks* (1980), 88 Ill. App. 3d 1073, 411 N.E.2d 97.

However, because the outcome of the probation revocation proceedings is the curtailment of defendant's liberty, due process requires a fair determination that acts forming the basis of the petition occurred. It also requires that fairness be accorded the defendant during the proceedings. In *People v. Pier* (1972), 51 Ill. 2d 96, 100, 281 N.E.2d 289, 291, the court held that due process demanded a defendant be afforded the same protection in admitting a probation violation as he would in pleading guilty to the substantive offense. If the substantive offense forming the basis of the petition is reversed and the charges dismissed, the revocation order must be vacated. *People v. Hannah* (1975), 31 Ill. App. 3d 1087, 335 N.E.2d 84.

Although Illinois courts have not addressed the insanity issue, other jurisdictions have. These courts reason that it is the acts which constitute the violation of probation. Due to the noncriminal nature of the probation revocation proceeding, its differing goals, and defendant's status, fundamental fairness does not require insanity as a defense to revocation based upon those acts. However, these courts hold fundamental fairness requires the mental state be considered in the second step of the *Morrissey* analysis. (*United States v. O'Sullivan* (S.D. N.Y. 1976), 421 F. Supp. 300; *Knight v. Estelle* (5th Cir. 1974), 501 F.2d 963, *cert. denied* (1975), 421 U.S. 1000, 44 L. Ed. 2d 668, 95 S. Ct. 2399; *State ex rel. Lyons v. Department of Health & Social Services* (Wis. App. 1981), 105 Wis. 2d 146, 312 N.W.2d 868; *People v. Breaux* (1980), 101 Cal. App. 3d 468, 161 Cal. Rptr. 653; *People ex rel. Newcomb v. Metz* (1978), 64 App. Div. 2d 219, 409 N.Y.S. 2d 554; *State v. O'Meal* (1977), 116 Ariz. 307, 569 P.2d 249; *State v. Johnson* (1973), 9 Wash. App. 766, 514 P.2d 1073; *Trumbly v. State* (Alaska 1973), 515 P.2d 707; *State v. Oyler* (1968), 92 Idaho 43, 436 P.2d 709.) We agree with this view.

Allegri was specifically ordered to obey the laws of the State while on probation. On February 20, just one day after her release from Champaign County Correctional Center, she detained Norman. Her only defense was that she was unable to conform her conduct to the requirements of the law. She did not state that she did not commit the acts. She argues that since she is not criminally responsible for her actions, her probation may not be revoked based upon them. However, it is defendant's acts which violate the terms of her probation—not her ultimate criminal responsibility for those acts.

"It is the fact of his conduct rather than his legal responsibility therefor that governs. Where, as here, defendant has engaged in felonious conduct and has shown himself unable to benefit from the terms of probation, *** it does not matter that he cannot be held criminally responsible for his acts committed while on probation." *United States v. O'Sullivan* (S.D. N.Y. 1976), 421 F. Supp. 300, 302.

It is undisputed that Allegri violated the terms of her probation. The insanity defense addresses her criminal responsibility for that violation. It does not address whether the acts were committed. Since it is the actions of the probationer which constitute the violation of probation, a defense which addresses only criminal responsibility for those actions does not preclude a determination that the violation has occurred. *People v. Breaux* (1980), 101 Cal. App. 3d 468, 474, 161 Cal. Rptr. 653, 657; *State v. O'Meal* (1977), 116 Ariz. 307, 309, 569 P.2d 249, 251.

■ The insanity defense addresses defendant's culpability. However, culpability is not the only concern in probation revocation proceedings. Here it is defendant's actions which violate the terms of her conditional release and frustrate its goals. The trial court, before revoking Allegri's probation, carefully considered her mental state. The two-part analysis set forth in *Morrissey* and *Gagnon* and required by statute was carried out. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—6—4.) In light of the unique nature of probation revocation proceedings, the defendant's status, and the nature of the insanity defense, due process does not require its availability in probation revocation proceedings.

In addition, this court has held that nonculpable conduct may form the basis of probation revocation. In *People v. Davis* (1984), 123 Ill. App. 3d 349, 353, 462 N.E.2d 824, 827, the court held defendant's probation was properly revoked even though he was not at fault. Davis' probation was conditioned upon his obtaining in-patient drug and alcohol dependency treatment. No state facility would accept him. The court stated that while personal culpability in probation violations was an important factor in the revocation determination, it was not the sole criterion. Circumstances other than ones chargeable to the defendant may frustrate the purposes of his probation.

■ Clearly Allegri's conduct frustrated both aims of her probation. Society's interest in protection from the type of conduct which led to her being placed on probation was not being served. She was placed on probation for the exact type of conduct which formed the basis of revocation. Nor was her rehabilitation being fostered. She

was ordered to obtain counseling. However, counseling absent medication was not helping. When the purposes of probation are frustrated, even the nonculpable conduct of the defendant may serve as a basis for revocation. *People v. Davis* (1984), 123 Ill. App. 3d 349, 462 N.E.2d 824.

■ Allegri further argues that the State did not prove all the elements of unlawful restraint by a preponderance of the evidence. Since the State is statutorily required to do so, her probation was improperly revoked. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—6—4(c).) However, the trial court held that the State had established that Allegri detained Norman in violation of the statute. (Ill. Rev. Stat. 1981, ch. 38, par. 10—3(a).) It noted that Allegri had successfully raised insanity as a defense and the State failed to rebut it. It stated insanity was not a defense in probation revocation. This finding is not inconsistent. An individual may knowingly commit acts without being able to conform his conduct to the requirements of the law. Having the requisite mental state does not imply an ability or inability to conform one's conduct.

Finally, Allegri argues that the courts have impliedly made affirmative defenses available in probation revocation proceedings. She relies on *People v. Cooper* (1976), 37 Ill. App. 3d 365, 345 N.E.2d 506, *rev'd on other grounds* (1977), 66 Ill. 2d 509, 363 N.E.2d 817. In *Cooper*, the trial court revoked defendant's probation. The defendant, while involved in a fight, beat back his assailant using an unloaded weapon. On appeal, the trial court's decision was reversed. The appellate court stated that Cooper, like any other citizen, was entitled to the benefits of the affirmative defense. It could not find defendant used more force than was necessary to defend himself. Therefore, the State had not met its burden of proving the violation by a preponderance of the evidence. (37 Ill. App. 3d 365, 367, 345 N.E.2d 506, 508.) The Illinois Supreme Court reversed. It found the evidence established defendant used excessive force. (66 Ill. 2d 509, 514, 363 N.E.2d 817, 819.) The availability of the defense was not an issue. Essentially, defendant argues that there is no distinction between the affirmative defenses for the purposes of their application in probation revocation.

However, justifiable use of force in defending oneself is not conduct society wishes to prevent. The balance of interests would weigh in favor of the probationer's continued freedom when the acts complained of are justified. Here Allegri's conduct was admittedly not lawful. The insanity defense would excuse criminal liability for her conduct. It would not justify the conduct. Society has a clear interest in protecting itself and serving the needs of the probationer. In this

case, upon resentencing, Allegri was ordered to undergo psychiatric treatment for as long as her psychiatrist thought necessary. The distinction between which affirmative defenses apply in revocation proceedings can be made because of society's different interests. The inherent nature of the defenses is also distinct. *People v. McCabe* (1971), 49 Ill. 2d 338, 275 N.E.2d 407.

For the foregoing reasons we find inability to conform one's conduct to the requirements of the law is not a defense in probation revocation proceedings. Therefore, we affirm the trial court.

Affirmed.

GREEN, J., concurs.

JUSTICE TRAPP, dissenting:

The majority opinion concludes that since the probation revocation is not criminal in nature, the provisions of section 5—2—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4) cannot properly be employed. That conclusion is stated too broadly, for it is recognized that in an alleged violation of probation the defendant is entitled to many rights and protections of a defendant in a criminal prosecution. It is apparent that the revocation procedure markedly affects personal rights and liberty.

Here, the petition alleged that defendant detained the victim without legal authority in violation of section 10—3(a) of the Criminal Code of 1961. That statute requires the mental state of an act done "knowingly."

> "Knowledge. A person knows, or acts knowingly or with knowledge of:
>
> (a) The nature or attendant circumstances of his conduct, described by the statute defining the offense, when he is consciously aware that his conduct is of such nature or that such circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that such fact exists.
>
> (b) The result of his conduct, described by the statute defining the offense, when he is consciously aware that such result is practically certain to be caused by his conduct." Ill. Rev. Stat. 1981, ch. 38, par. 4—5.

The trial court agreed that the prosecution had failed to rebut the "defense" of insanity and the majority opinion agrees that the evidence supports a finding of insanity. The trial court found that the "defense" was not available in a proceeding for revocation of proba-

tion, and again this court agrees.

Upon the allegations of the petition, the trial court necessarily found that defendant was guilty of a criminal offense as alleged in the petition to revoke, but despite such a basis for revocation defendant was denied a defense that would be available to a defendant in an original prosecution of this offense. Again, upon the agreed circumstances, the defendant would be entitled to a finding of "not guilty by reason of insanity" and would therefore be examined and treated subject to the considerations provided in section 5—2—4(a) of the Unified Code of Corrections.

The statutory structure of the latter section of the Code supplies a disposition which would be uniform throughout the venue of this court, and would avoid the *ad hoc* solutions produced by the varying facilities and programs available in the several circuits of the State.

I suggest that a petition to revoke probation which alleges a commission of a criminal offense is presented in a different posture from that of a petition which alleges certain acts or conduct, other than an offense charged, indicating that rehabilitation has failed, or that the defendant represents a hazard to himself or to others.

For such reasons I would reverse the judgment of the trial court and remand for disposition under the last-cited section of the Unified Code of Corrections.