THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHARON C. KANE, Defendant-Appellant.

Fifth District   No. 5—84—0637

Opinion filed July 30, 1985.

Randy E. Blue and Daniel M. Kirwan, both of State Appellate Defender's office, of Mt. Vernon, for appellant.

Randall J. Rodewold, State's Attorney, of Chester (Kenneth R. Boyle, Stephen E. Norris, and Raymond F. Buckley, Jr., all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KARNS delivered the opinion of the court:

Following a plea of guilty to the offense of unlawful possession of cannabis in an amount exceeding 500 grams (Ill. Rev. Stat. 1981, ch. 56½, par. 704(e)), defendant, Sharon Kane, was placed on 30 months' probation. The State subsequently sought to revoke defendant's probation, alleging that while on probation, she committed the offense of unlawful possession of a controlled substance (codeine) with intent to deliver (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(c)). Following a hearing, the court found that the State had proved the allegations of the petition by a preponderance of the evidence and subsequently revoked the defendant's probation and sentenced her to two years' imprisonment.

On appeal, defendant contends that the evidence at the probation revocation hearing did not establish that she had knowingly possessed the codeine with the intent to deliver the same and that, accordingly, the court erred in finding that she had violated the terms of her probation and in revoking her probation. In a supplemental brief, defendant contends that she is entitled to an additional credit of two days on her sentence of imprisonment.

The facts below reveal that on September 21, 1983, an information was filed charging the defendant, jointly with her husband and

others, with the September 20, 1983, offense of unlawful possession of more than 500 grams of a substance containing cannabis. On October 3, 1983, the defendant pleaded guilty and was sentenced to a 30-month term of probation and ordered to pay a fine of $750. On August 28, 1984, the State's Attorney filed a petition to revoke defendant's probation, alleging that on June 21, 1984, defendant had possessed a controlled substance (codeine) with the intent to deliver. A hearing was held on September 19, 1984, on the petition to revoke defendant's probation.

Norman L. Mudd, a Randolph County jailer, testified that on the night of June 21, 1984, the defendant brought to the jail a book and a bottle of prescription pills, which she said were for her husband, Kelly Kane, who was then incarcerated in the jail. Mudd told the defendant that the sheriff would have to check the items before they could be given to her husband. Mudd did not inspect the book but put it on his desk and attached a note for the sheriff.

Dean A. Schnoeker, another Randolph County jailer, testified that he came on duty at 7:30 a.m. on June 22, 1984. He was cleaning the cell block when defendant's husband asked him if his wife had brought him a book. Schnoeker saw the book and a note on the desk. Between 9 a.m. and 9:30 a.m., Schnoeker gave the book to the sheriff. The sheriff noticed that the binding at the top of the book was loose, and pulled out a strip of tinfoil about six inches long.

Ardell Currat, the Randolph County sheriff, testified that he examined the book brought by the defendant. He noticed that the top of the binding was tight, while the bottom was loose. He bumped the book a few times, exposing part of a piece of tinfoil. In order to remove the tinfoil, Sheriff Currat cut the binding with a razor blade. He unfolded the tinfoil and found a white powder inside, which he gave to a deputy to take to Desoto for analysis. Currat also examined the container of medication but did not give the medicine to Kelly. Currat explained that the jail policy regarding prescription medicine was that an inmate was only allowed medicine that had been prescribed or approved after he had been jailed. With respect to the defendant's husband, Sheriff Currat related that during the three or four days he was in jail, he did not receive any prescription medication and was only permitted aspirin.

The parties stipulated that Daniel LeCocq, a chemist, would testify that he analyzed the white powder and determined that it weighed .9 grams and contained codeine.

Testifying in her own behalf, defendant told the court that she was married to Kelly Kane and that on June 21, 1984, she visited her

husband at 1 p.m. During the visit, defendant's husband requested that she bring him a bottle of prescription drugs and a book entitled, "Audio Encyclopedia, Volume Two." Defendant stated that, in the company of a sister and two brothers, she drove back to her trailer to obtain the book and medicine. The four searched for the book Kelly had requested but were unable to locate it. Finally, according to the defendant's account, the defendant's brother, Robert Whitby, "just picked up a book and handed it to [the defendant] and said, here, this is good enough." Defendant was able to find the medicine bottle, which contained "Emprin [sic] compound, codeine 3." This medicine had been prescribed by a doctor in East St. Louis. Defendant then drove back to the Randolph County jail, where she left the items. Defendant denied knowing that the book contained drugs. On cross-examination, defendant admitted that her husband was addicted to codeine, and that she was aware that no medicine would get to him without a doctor's approval.

Robert Whitby, defendant's brother, testified that on the evening of June 21, 1984, he accompanied the defendant to her trailer, to get a book for the defendant's husband. Whitby described the book as the second volume of some sort of encyclopedia. Whitby related that they were unable to locate the book and eventually, when he grew tired of looking, he decided to take another book instead. As he explained:

"I picked it up and gave it to Sharon and told her to give him, Kelly, the book. I was tired of looking for the other one. We couldn't find it. *** It was in the back room, the table there, and I just reached out and picked it up. I said, here, just give him this one."

They then drove back to the Randolph County jail. Whitby denied placing the tinfoil in the book.

Kelly Kane, defendant's husband, testified that at about 10 a.m. or 11 a.m. on June 21, 1984, the defendant visited him at the Randolph County jail. At that time he asked defendant to bring him a bottle of prescription medicine, some wrestling magazines, and volume 2 of his Audio Encyclopedia. He stated that he took the medicine, Empirin compound with codeine, because he had "bad knees." Kane identified People's exhibit No. 1 as his digital electronics book. He told the court that he put codeine in a tinfoil packet and placed it inside the binding of this book. He explained that the reason he concealed the drug was because he did not want the defendant to know that he used it. On cross-examination, Kane admitted that he was addicted to codeine. He also admitted that when the defendant saw him in jail, he had been without codeine for three days and was "strung

out." He conceded further that defendant knew that he needed codeine. As he put it, "she could tell by looking at me."

The court found that the circumstantial evidence established that the defendant knew that the book contained codeine. The court noted that the defendant was aware that her husband was in need of codeine and that she had seen him earlier that day. The court further observed, in this regard, that the defendant brought her husband a book which he did not request. The court remarked that this did not make any sense and asked rhetorically: "Why does he suddenly end up with the book that has the codeine in it?"

■ With respect to the defendant's first contention on appeal, we decline to disturb the finding of the trial court and find that the State proved the allegations of the petition by a preponderance of the evidence. While it is true, as the defendant points out, that no one contradicted either her husband's testimony that it was he who placed the drug in the book or her brother's testimony that it was he who picked out the book, the trier of fact is not obligated to accept the testimony of defense witnesses on faith alone even when not directly contradicted. (*People v. Lahori* (1973), 13 Ill. App. 3d 572, 577, 300 N.E.2d 761, 764.) Here, the defendant's husband and brother presumably had her interests at heart. Additionally, both had very little to lose in making the statements they did. Defendant's brother testified that he merely selected the book; he did not admit knowing that it contained contraband. While defendant's husband asserted that he put the drug in the book, he was careful to state that the book was not the one that he requested. Moreover, he indicated that the source of the codeine was prescription pills. Furthermore, defendant's husband's explanation for concealing the contraband was tenuous. He testified that he was hiding the codeine from the defendant for the reason that he did not want to upset her. It is unlikely, however, that defendant would have found its presence offensive, given her own extensive drug involvement as indicated by her presentence investigation report. In fact, the offense for which her probation was revoked was possession of cannabis in an amount exceeding 500 grams—an offense which she committed jointly with her husband.

A probation revocation proceeding is not a criminal adjudication. It does not determine guilt or innocence of an accused. The State need only demonstrate by a preponderance of the evidence that the act giving rise to the petition occurred. (*People v. Allegri* (1984), 127 Ill. App. 3d 1041, 469 N.E.2d 1126.) We find that circumstantial evidence established that the defendant knew that the book contained codeine and, accordingly, the trial court properly revoked her probation.

■ In a supplemental brief, defendant raises an additional issue on appeal, contending that she is entitled to an additional credit of two days on her sentence of imprisonment. When the judge sentenced the defendant on September 28, 1984, after revoking her probation, he credited her sentence with two days that she had served in the Randolph County jail. The defendant contends however, that she should have received a credit of four days. In essence, defendant claims that she is entitled to credit for time which she spent in custody for a subsequent offense which later became the basis for the revocation of her probation in the instant case.

The record reveals that in the case at bar, Randolph County cause No. 83—CF—58, the defendant was arrested on September 20, 1983, for the offense of unlawful possession of cannabis. She was released on bail on September 21, 1983. On October 3, 1983, the defendant pled guilty and was placed on probation for 30 months.

On July 24, 1984, in Randolph County cause No. 84—CF—41, defendant was arrested for the offense of possession of a controlled substance with intent to deliver. She was released on July 25, 1984.

On August 28, 1984, in cause No. 83—CF—58, the case at bar, the State filed a petition to revoke the defendant's probation based upon her commission of the July 24, 1984, offense. Following revocation, defendant was sentenced to a term of two years and was given credit for the two days which she spent in jail (September 20 and 21, 1983) following her arrest in the instant case.

Section 5—8—7(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—7(b)), governing the calculation of a term of imprisonment, makes it clear that credit is conditioned upon the fact of "time spent in custody as a result of the offense for which the sentence was imposed." (*People v. Speller* (1977), 46 Ill. App. 3d 208, 212, 360 N.E.2d 1155, 1158.) Subsection (c) of that same section provides that:

> "An offender arrested on one charge and prosecuted on another charge for conduct which occurred prior to his arrest shall be given credit on the determinate sentence or maximum term and the minimum term of imprisonment for time spent in custody under the former charge not credited against another sentence." (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—7(c).)

The purpose of subsection (c) is to insure credit for all confinement since arrest in the circumstance where "the original charge is dropped in favor of a new charge which results in conviction and imprisonment." (Ill. Ann. Stat., ch. 38, par. 1005—8—7, Council Commentary, at 224 (Smith-Hurd 1982).) We have previously held that sub-

section (c) was added to protect the right secured to a defendant under subsection (b), and that it did so by preventing the State from depriving a defendant of credit for jail time through technical evasion. (*People v. Speller* (1977), 46 Ill. App. 3d 208, 212-13, 360 N.E.2d 1155, 1158.) In other words, if a defendant is in custody awaiting trial on one charge, the State cannot defeat his right to credit for this jail time by later dropping that charge in favor of another charge based upon the same conduct.

In applying the above statutory provisions to the case at bar, we conclude that the defendant is not entitled to credit for the time which she spent in custody on the unrelated offense (unlawful possession of a controlled substance with intent to deliver). Subsection (b) of the statute only requires the granting of credit for time spent in custody as a result of "the offense for which the sentence was imposed." (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—7(b).) The sentence in the case at bar was imposed for the offense of unlawful possession of cannabis in cause No. 83—CF—58. Therefore, the defendant should not receive credit for the two days she spent in jail for unlawful possession of a controlled substance with intent to deliver in cause No. 84—CF—41.

We reach the same result under subsection (c). The defendant was originally charged with unlawful possession of cannabis and it was on this offense that she was sentenced. The State did not substitute charges based upon the same conduct—which is the technical evasion of the statute which subsection (c) was designed to prevent. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—7(c).) In attempting to apply section 5—8—7(c), defendant maintains that she was arrested on one charge (the July 19, 1984, information alleging the June 21, 1984, unlawful possession of a controlled substance with the intent to deliver), and prosecuted on September 19 and 28, 1984 (when her probation was revoked) on another charge (either the September 21, 1983, information alleging the September 20, 1983, unlawful possession of cannabis, or the August 28, 1984, petition to revoke probation which alleged the criminal conduct of June 21, 1984) for conduct (the June 21, 1984, offense) which had occurred prior to her July 24, 1984, arrest. She contends she spent time "in custody under the former charge [July 19, 1984, information]" which time has not been credited against another sentence. Therefore, she claims she is entitled to have her present sentence which resulted from the "other charge" credited with those two days (July 24 and 25, 1984) she spent in custody.

We find defendant's contention to be without merit, inasmuch as the revocation of defendant's probation was merely an incident of her

1983 sentence. The error in the defendant's logic is her characterization of the revocation of her probation as a "prosecution"—a mistake which allows her to begin with the second offense instead of the first. Her "prosecution," however, had already taken place. It began with the filing of the information on September 21, 1983, and concluded with the acceptance of her plea of guilty on October 3, 1983. See Ill. Rev. Stat. 1983, ch. 38, par. 2—16, defining "prosecution."

For the foregoing reasons, the judgment and sentence of the circuit court of Randolph County is affirmed.

Affirmed.

WELCH and HARRISON, JJ., concur.