THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARK BURNIDGE, Defendant-Appellant.

Second District   No. 2—95—0255

Opinion filed April 10, 1996.—Rehearing denied May 24, 1996.

Carl P. Clavelli, of Chicago, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE THOMAS delivered the opinion of the court:

A jury convicted the defendant, Mark Burnidge, of two counts of aggravated criminal sexual abuse (720 ILCS 5/12—16(d) (West 1994)). The trial court sentenced him to 36 months' probation and a 9-month term of periodic imprisonment. The court further ordered that the defendant pay restitution and fines totalling $1,500. The defendant appeals.

R.R. testified that on April 16, 1994, she was 15 years old and a member of St. Matthew's Lutheran Church. On that same day, R.R. went to the church with her 15-year-old friend, J.P. The two girls arrived early at the church to help set up for a youth event. The 23-year-old defendant, who was a counselor for the youth group, was also there. R.R. helped the defendant set up tables in the front lobby area while J.P. moved desks in a classroom at the facility. After the defendant and R.R. finished in the lobby area, they walked together through the stage area toward the classroom. En route, the defendant began kissing R.R. He then placed his hand under her shirt and bra and began feeling her breasts. At that moment, the defendant placed R.R.'s hand on the front of his pants. After a short time R.R. told the defendant to stop, and the two then went to find J.P. in the classroom.

R.R. further testified that she and the defendant met J.P. in the classroom. After the two girls searched for a VCR, the defendant gave J.P. a key and told her to look in the rest of the classrooms while he and R.R. looked for it in the basement. The defendant and

R.R. then went to the church basement. There, the defendant kissed R.R. and felt her in the same places under her clothing and had her feel him in the same place. R.R. told the defendant to stop, which he did. However, 30 seconds later the defendant began making advances again. The two left the basement when R.R. told the defendant that they had to go. R.R. then went to the gym and told J.P. that she had to go to the bathroom. J.P. accompanied R.R. to the bathroom. There, R.R. fixed her bra, which the defendant had unfastened, and told J.P. what had happened to her.

R.R. also testified about an incident that occurred in August 1993. On that day, she and the defendant played basketball in the church gym. At some point, the defendant led R.R. onto the stage, where he kissed her and fondled her breasts.

J.P. testified that on April 16, 1994, she and R.R. looked for the VCR and, when they could not find it, the defendant gave her a key to the classrooms to look for it. The defendant and R.R. then went to look for it together. Five or ten minutes later, J.P. rejoined R.R., and R.R. asked her to accompany her to the bathroom. There, R.R. tucked in her shirt, fixed her bra, started to cry, and told J.P. that the defendant had kissed her and tried going up her shirt.

Defense counsel objected to J.P.'s testimony about what R.R. told her in the bathroom on hearsay grounds. The State argued that the testimony fell under the excited utterance exception to the hearsay rule. The trial court overruled the objection.

The defendant testified that on the evening in question he and R.R. and J.P. searched for a VCR. When it was not found in its usual storage place, he told the girls that he would go downstairs to look for it. Although he never requested her to do so, R.R. accompanied him downstairs. On the way, she put her arm around his waist while they walked. They stopped at the end of a hallway in a dimly lit area, and the defendant kissed R.R. and placed his hand on her breast over her clothing. The defendant estimated that the entire incident lasted about 10 seconds. He stated that there was no conversation between him and R.R. and that he stopped the touching because he thought that it was not proper.

Prior to trial, the court conducted a hearing on several pretrial motions. In that regard, two subpoenaed witnesses, the Reverend Carleton Payne, pastor of St. Matthew's Lutheran Church, and Todd Martin, a deacon at the church, brought a motion to exercise the clergy privilege. In the motion they requested that they not be compelled to violate their oaths as clergymen by being required to testify about conversations they had had with the defendant. Additionally, the defendant filed two pretrial motions. The motions essentially

sought to exclude evidence and testimony derived from allegedly privileged communications made by the defendant to the Reverend John E. Golisch, associate pastor at St. Matthew's Lutheran Church, and subsequently reported by Golisch to the Illinois Department of Children and Family Services (DCFS).

At the joint hearing on the above-mentioned pretrial motions, Rev. Payne testified that he learned of the April 16, 1994, incident involving the defendant and R.R. and that he spoke with the defendant about it. Payne stated that he attended a joint meeting with the defendant, the victim, and the victim's parents. Thereafter, Payne referred the defendant to Rev. Golisch for counseling. Payne noted that he would not testify about any of the conversations regarding the incident.

The defendant testified that he had numerous conversations about the incident with Rev. Payne. He admitted that he apologized to the victim at the meeting with the victim's parents. He noted that none of the participants of that meeting said anything to indicate that his disclosures would be revealed in public.

Rev. Golisch testified that through his office at the church he provides spiritual and psychological counseling, which he views as inseparable. He noted that he is a clinical psychologist and an ordained Lutheran pastor. As an ordained Lutheran minister, Rev. Golisch had taken an oath containing a vow of silence with respect to confessions. Late in May 1994, he became concerned that he was required to report the incident involving the defendant which he learned about in a counseling session. He contacted the DCFS and was informed that as a pastor he was not required to report, but as a psychologist he was required to report. Thereafter, Golisch filed a report with the DCFS which led to a criminal investigation of the matter which in turn led to criminal charges being filed against the defendant.

The trial court granted the motion of the two pastors to be excused from testifying against the defendant about conversations they had had with him. The court further granted the defendant's motion to exclude Rev. Golisch as a witness and the report made to the DCFS from being introduced into evidence. However, the court refused to suppress and exclude all other testimony and evidence which was obtained following the making of the report and which arguably would not have been obtained had it not been for the making of the report.

On appeal, the defendant first argues that the State improperly compelled Rev. Golisch to file a report with the DCFS in violation of the clergy privilege as set forth in section 8—803 of the Code of Civil Procedure (Code) (735 ILCS 5/8—803 (West 1994)).

In response, the State maintains that the clergy privilege did not apply in this case because the defendant did not instigate the spiritual counseling and the defendant's relationship with the pastors was more of an employee-employer relationship than a penitent-clergy relationship. The State also suggests that the privilege belonged only to the pastors and therefore Rev. Golisch could waive the privilege when he made the report. Therefore, it argues, the defendant could not challenge the report itself. We disagree with the State's contentions.

■ Section 4 of the Abused and Neglected Child Reporting Act lists the various categories of professionals who must immediately make a report to the DCFS when they have reasonable cause to believe that a child known to them in their professional or official capacity may be an abused or neglected child. 325 ILCS 5/4 (West 1994). Section 4 further provides that the privileged quality of communication between any professional person required to report and his patient or client shall not apply to situations involving abused or neglected children. 325 ILCS 5/4 (West 1994). The statute, however, does not list members of the clergy as persons required to report under the statute. See 325 ILCS 5/4 (West 1994). Thus, the clergy privilege is applicable.

■ Section 8—803 of the Code allows the privilege to be raised when disclosure by the minister is " 'enjoined by the rules or practices of such religious body or of the religion which he or she professes.' " *People v. Bole*, 223 Ill. App. 3d 247, 262 (1991), quoting Ill. Rev. Stat. 1989, ch. 110, par. 8—803 (now 735 ILCS 5/8—803 (West 1994)). The clergyman cannot be " 'compelled to divulge any information which has been obtained by him or her in such professional character or as such spiritual advisor.' " *Bole*, 223 Ill. App. 3d at 262, quoting Ill. Rev. Stat. 1989, ch. 110, par. 8—803 (now 735 ILCS 5/8—803 (West 1994)). The privilege belongs both to the person making the statement and the clergyman. See *Bole*, 223 Ill. App. 3d at 262-63; *People v. Diercks*, 88 Ill. App. 3d 1073, 1077 (1980) (when the clergyman does not object to testifying, the burden is on the person asserting the privilege to show that disclosure is enjoined by the rules or practices of the relevant religion).

■ Applying the above-mentioned principles to the instant case, we find that the defendant's conversations with Rev. Golisch were privileged. The fact that Golisch was a clinical psychologist in addition to a pastor and that he applied both spiritual and psychological principles in his counseling did not negate the existence of the privilege. Since the privilege belonged to the pastor as well as the defendant, the trial court properly excluded the report from being

introduced into evidence. The fact that the defendant did not instigate the counseling and that he was counselor for the youth group at the church did not destroy the privilege. The statute simply does not limit the privilege in the ways suggested by the State.

The defendant claims that the proper remedy for the violation of the clergy privilege here is to dismiss the case and discharge him from further prosecution since it is unlikely that any evidence would have been obtained against the defendant had the State not compelled the report.

We strongly disagree with the defendant's novel argument. The trial court applied the proper remedy, which was to exclude the privileged communications and the report filed in violation of the privilege. The defendant's reliance on *People v. Knippenberg*, 66 Ill. 2d 276 (1977), is misplaced. There, the State used evidence against the defendant in violation of his attorney-client privilege. The supreme court, however, did not declare the entire prosecution of the defendant void but instead remanded the cause for a new trial without the improper evidence.

Here, the defendant seems to be arguing that the victim would not have been contacted by police and thus would not have testified against him but for the report and, therefore, the victim's testimony should be excluded.

We find that the defendant's argument must be rejected. We see no reason why the clergy privilege should be extended to exclude testimony offered by others who are not subject to the privilege. The defendant's attempt to place the statutory privilege on the same plane as the exclusionary rule fashioned for violations of the fourth amendment is clearly erroneous.

■ The defendant next argues that the trial court committed reversible error in allowing J.P. to corroborate the victim's testimony with a statement that the victim made shortly after the crime.

Initially, we note that the defendant failed to raise the issue in a post-trial motion and therefore waived it. *People v. Stewart*, 104 Ill. 2d 463, 488 (1984). Even if the defendant had not waived the issue, we would find that the evidence was properly admitted under the excited utterance exception to the hearsay rule. For that exception to apply, three requirements must be met: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence. *People v. Sommerville*, 193 Ill. App. 3d 161, 174 (1990). The time factor is an elusive element and will vary with the facts of each case. *People v. Shum*, 117 Ill. 2d 317, 343 (1987). Furthermore, the fact that the statement was made in re-

sponse to the question "what happened" does not necessarily destroy its spontaneity. *Shum*, 117 Ill. 2d at 343.

Here, we find that the statement in question fits within the factors enunciated in *Sommerville*. The fact that it was made in response to a single question shortly after the incident did not destroy its spontaneity. Accordingly, we find that the trial court properly allowed the complained-of testimony. Additionally, we note that, even assuming *arguendo* the court erred in admitting the testimony, any error was harmless in light of the overwhelming evidence of the defendant's guilt and therefore did not constitute reversible error.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

DOYLE and HUTCHINSON, JJ., concur.